**UNITED STATES of America, Appellee,**

v.

**Richard BRIM, a/k/a Sam, Appellant.**

**No. 80–1258.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1980.

Decided Oct. 8, 1980.

---

Richard H. Mays, Little Rock, Ark., argued for appellant.

George W. Proctor, U. S. Atty., Don N. Curdie, Asst. U. S. Atty., argued, Little Rock, Ark., for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and VAN PELT, Senior District Judge.[*]

HENLEY, Circuit Judge.

Appellant, Richard Brim, was convicted of aiding and abetting codefendant, Charles Stroud, in the distribution of phenocyclidine (PCP), a Schedule II controlled substance,

in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.[1] On appeal, Brim contends that the district court[2] erred in (1) denying his motion to sever the trials of Stroud and Brim; (2) failing to grant his motion for a directed verdict of acquittal; and (3) failing to dismiss the indictment because the trial was not timely under the Speedy Trial Act. We affirm.

The indictments of Brim and Stroud resulted from a sale of PCP to undercover agents of the United States Drug Enforcement Agency. On February 22, 1979 Brim, Charles Stroud and Stroud's brother, Randy, drove from Stroud's home in Virden, Illinois to Little Rock, Arkansas and checked into a motel. Soon after midnight DEA undercover informer Gary Lang arrived per prior arrangement to discuss a purchase of PCP.[3] Stroud gave Lang a sample of the substance for sale and Lang left the room to conduct a field test with the help of another undercover agent, Don Sanders, who was waiting outside. After the test showed that the substance was PCP, Lang returned to the motel room with Sanders. Stroud took a bag of PCP from a drawer and Sanders paid him $3,000.00 for it.

Brim and Randy Stroud were also in the room while the business was transacted. Testimony at trial revealed that during the time Charles Stroud was making the sale, Brim was lying on a bed in the motel room. He is reported to have told the agents that the PCP was of "good" quality and commented "the more you buy, the cheaper it is." Brim also asked Lang and Sanders whether they wanted to buy some MDA, another drug.

## I. SEVERANCE

■ Initially, Brim contends that the district court erred in refusing to grant his

---

[*] The Honorable Robert Van Pelt, United States Senior District Judge, District of Nebraska, sitting by designation.

[2.] The Honorable Richard S. Arnold, sitting as United States District Judge for the Eastern District of Arkansas.

[1.] Brim was sentenced to three years in prison plus a two year special parole term.

Brim was acquitted on a second count of conspiracy to possess the PCP with intent to distribute.

[3.] Lang was a former drug violator who became an informer for the DEA in Little Rock. Lang had purchased drugs from Stroud on other occasions.

pretrial motion for a trial separate from that of codefendant Stroud. However, appellant's failure to renew his motion for severance at the close of the government's case or at the conclusion of all the evidence waived his demand for a separate trial. *United States v. Luschen,* 614 F.2d 1164, 1174–75 (8th Cir. 1980); *United States v. Robertson,* 588 F.2d 575, 577 (8th Cir. 1978), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979); *United States v. Pelton,* 578 F.2d 701, 711 (8th Cir.), *cert. denied sub nom., Rich v. United States,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).

▆▆ In any event, denial of Brim's motion for severance was not error. In support of the motion Brim argued that he was unduly prejudiced by the introduction of tape recordings as evidence of the alleged conspiracy. The recordings were of telephone conversations between Stroud and agent Sanders which took place subsequent to the February 23 sale of PCP. Brim was not a party to the recorded conversations, nor was he mentioned directly. However, the government's theory was that Brim was the unnamed supplier referred to by Stroud. The government offered the tapes, in conjunction with telephone records showing contemporaneous calls by Stroud to Brim, as circumstantial evidence that the conspiracy was ongoing.[4] Brim expressly waived any hearsay objection to the recordings.

▆▆ In ruling on a motion for severance the district court weighs the inconvenience and expense of separate trials against the prejudice resulting from a joint trial of codefendants. The question whether there is prejudice warranting severance is addressed to the sound discretion of the trial court; the court's decision will not be disturbed on appeal absent an abuse of discretion. Fed.R.Crim.P. 14; *United States v. Luschen,* 614 F.2d 1164, 1175 n.8 (8th Cir.

1980); *United States v. Milham,* 590 F.2d 717, 722 (8th Cir. 1979); *United States v. Weir,* 575 F.2d 668, 672 (8th Cir. 1978).

▆▆ Brim is required to show prejudice. A mere showing that defendant would have a better chance of acquittal in a separate trial is not sufficient to require severance. *United States v. Milham,* 590 F.2d at 722. Indeed, absent a showing of clear prejudice, joinder of defendants charged with conspiracy is preferred where proof of the charges is based on the same evidence and acts. *United States v. Luschen,* 614 F.2d at 1175 n. 8; *United States v. Milham,* 590 F.2d at 722.

▆▆ Although relief from prejudicial joinder is available under Fed.R.Crim.P. 14, appellant has failed to establish real prejudice. Stroud and Brim were charged with a common conspiracy, and Brim was charged with aiding and abetting Stroud in the principal offense. The acts which formed the bases for these charges were identical. In addition, the district court gave cautionary instructions that any evidence related to drug sales subsequent to February 23 was only to be considered in the case against Stroud. Finally, although the government presented circumstantial proof that would have permitted the jury to conclude that Brim was part of an ongoing conspiracy to distribute drugs, the jury acquitted Brim on the conspiracy charge. In sum, there is no indication that the district court abused its discretion in denying the motion to sever.

## II. MOTION FOR ACQUITTAL–SUFFICIENCY OF THE EVIDENCE

Appellant Brim next maintains that there was insufficient evidence of his specific criminal intent or culpable conduct to support a conviction for aiding and abetting and that the district court therefore erred in denying his motion for a directed verdict of acquittal.

---

4. We note that Brim was acquitted on the conspiracy count which the recordings were offered to support. Notwithstanding, Brim contends that the jury was unable to separate the aiding and abetting charge from the conspiracy count and that the introduction of the tape recordings prejudiced the jury's consideration of the aiding and abetting count.

■ A motion for acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *United States v. Anziano*, 606 F.2d 242, 244 (8th Cir. 1979); *United States v. White*, 562 F.2d 587, 589 (8th Cir. 1977).

■ The essential elements of aiding and abetting are three: (1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his action to make it succeed. *United States v. Anziano*, 606 F.2d at 244–45; *United States v. Wedelstedt*, 589 F.2d 339, 344 (8th Cir. 1978), *cert. denied*, 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The evidence indicates that the jury could reasonably have concluded that Brim's participation satisfied these elements. Brim was present at the motel when the sale was made. There was testimony that he made comments to the undercover agents about the quality and price of the PCP, *i. e.*, "it's good" and "the more you buy, the cheaper it is." Brim also offered to sell the agents another drug. Thus, there was evidence from which the jury could have inferred that Brim was more than a passive observer. The evidence is sufficient to sustain the jury verdict and the district court properly denied the motion for judgment of acquittal.

### III.  SPEEDY TRIAL ACT

Appellant's final argument on appeal is that his trial was not timely under the Speedy Trial Act and therefore the charges against him should be dismissed.

The original indictment was filed on October 1, 1979, and the defendants were arraigned on October 16, 1979, entering pleas of not guilty. On November 20, 1979 a superseding indictment was filed. It was identical to the original indictment except that it extended the time period of the alleged conspiracy to include the dates in March, 1979 when the taped conversations between Stroud and Sanders took place. The trial began on January 28, 1980.

The Speedy Trial Act of 1974 (as amended) provides *inter alia*:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

Pursuant to the Act the Eastern District of Arkansas has adopted a Plan for Prompt Disposition of Criminal Trials. The Plan in part provides:

(e) *Superseding Charges.* If, after an indictment or information has been filed, a complaint, indictment, or information is filed which charges the defendant with the same offense or with an offense required to be joined with that offense, the time limit applicable to the subsequent charge will be determined as follows:

.     .     .     .     .

(2) If the original indictment or information is pending at the time the subsequent charge is filed, the trial shall commence within the time limit for commencement of trial on the original indictment or information.

Section III (5)(e)(2).

The parties agree that under these provisions the seventy day period began to run on the date of arraignment on the original indictment, October 16, 1979. Thus, a timely trial would have begun on or about December 26, 1979, barring excludable periods of delay. The controversy here is whether the periods when various pretrial motions

were pending should be excluded from the seventy day maximum. The Act provides, in relevant part:

(h) The following periods of delay shall be excluded in computing the time within which . . . the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(F) (as amended 1979).

■■■ Appellant Brim filed his first pretrial motion on October 23, 1979. From that date, overlapping filings by the defendants and the government kept motions pending continuously until December 19, 1979 when the district court disposed of the motions remaining before it and set trial for January 28, 1980. The appellant argues that ordinary pretrial motions for discovery, disclosure of alibi witnesses, and the like do not give rise to excludable periods unless delay of the trial actually is caused by the filing of the motions. The government contends, on the other hand, that the statute provides for automatic exclusion of the time when such motions are pending.

The district court considered the theories of each side and concluded that the Act intended automatic exclusion. This interpretation is consistent with the language of the Act, as amended, and with the apparent purpose of the amendment. Prior to the 1979 amendment the Act provided for exclusion of any "delay resulting from hearings on pretrial motions." 18 U.S.C. § 3161(h)(1)(E) (amended 1979). The present version of the Act would exclude "delay resulting from any pretrial motion from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion." 18 U.S.C. § 3161(h)(1)(F).[5]

The appellant focuses on the phrase "delay resulting from" and concludes that some unusual delay of the trial must be caused before the exclusion is effective. However, the legislative history of the 1979 amendment demonstrates that Congress intended a more liberal interpretation of the provision as a whole. The House Report includes the following discussion of the pretrial motion exclusion:

The provision of existing law relating to exclusion of periods of delay 'resulting from hearings on pretrial motions' is revised to avoid an unduly restrictive interpretation of the exclusion as extending only to the actual time consumed in a pretrial hearing. The committee approves the expansion of this exclusion to 'delay resulting from any pretrial motion, from the filing of the motion, through the conclusion of the hearing on, or other prompt disposition of, such motion' with the intention that potentially excessive and abusive use of this exclusion be precluded by district or circuit guidelines, rules, or procedures relating to motions practice.

H.R. Rep. No. 96–390, 96th Cong., 1st Sess., *reprinted in* [1979] U.S.Code Cong. & Admin.News pp. 805, 814.[6] *See also* H.R. Rep. No. 93–1508, 93rd Cong., 2d Sess., *reprinted*

---

**5.** The Speedy Trial Act Amendments of 1979 became effective August 2, 1979.

**6.** In discussing the need for the 1979 amendments the House Report also noted:

[T]he experience in implementation of the Act during the 'phase-in' period, while encouraging, suggests that the provisions of the act were not being fully implemented. This was particularly true of provisions of section 3161(h)(1) -(7), relating to exclusions of time, and section 3161(h)(8), relating to the grant-

ing of 'ends of justice' continuances. As a result, many cases that were exceeding the time limits of the act could have been brought into compliance by the use of provisions already in the law which take into account circumstances justifying the granting of additional time to move a case through the criminal justice system.

H.R.Rep.No. 96–390, 96th Cong., 1st Sess., *reprinted in* [1979] U.S.Code Cong. & Admin. News, pp. 805, 808.

*in* [1974] U.S.Code Cong. & Admin. News, pp. 7401, 7414 (report accompanying Speedy Trial Act of 1974). We have found no prior judicial interpretation of this recently amended section. However, we believe that the district court's construction is consistent with the flexible application intended by Congress and we approve it.

Seven days had elapsed from Brim's arraignment on October 16, 1979 to October 23, 1979 when he filed his first pretrial motion. From October 23 until December 19 various pretrial motions were continuously pending. During that period the running of the seventy day limitation was tolled. The district court's conclusion that Brim's trial should begin within sixty-three days (seventy maximum less the seven already lapsed) of the disposition of the final pretrial motions was correct. Thus, Brim's trial which began on January 28, 1980 was well within the permissible time period. His claim that the charges against him should have been dismissed because his trial was not timely under the Speedy Trial Act must fail.

Having found after careful review that the defendant's contentions on this appeal are without merit, it follows that the judgment of the district court should be, and in all things it is, affirmed.