UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard SAYERS, Defendant-Appellant.

No. 81–5984
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1983.

Richard Sayers, pro se.

William B. King, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, FAY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Richard Sayers appeals his conviction for conspiracy to possess with intent to distribute marijuana. Appellant contends that his conviction was erroneous because there was

entrapment as a matter of law or, in the alternative, the conduct of the government agents was so outrageous that due process was violated. Appellant additionally argues that the district court erred in refusing to dismiss his indictment because the indictment was not timely under the Speedy Trial Act.

The incidents leading to appellant's arrest began in January of 1981. At that time, Walter Bauer received a phone call from Mort Pottlitzer, an acquaintance of appellant Richard Sayers, who said he wanted Bauer to meet appellant. Bauer was awaiting sentence on a distribution of cocaine charge to which he had pleaded guilty, with an agreement to aid the Drug Enforcement Administration in return for a maximum sentence of five years.

Following the phone call, Bauer, Pottlitzer, and appellant met and discussed the possibility of becoming partners in drug ventures. During the meeting, appellant mentioned that his friend Darrell Wood might put some property up for collateral to finance a drug venture. The next day appellant called Bauer to tell him that a meeting with Wood had been arranged. Bauer drove to Pine Island where he first spoke with appellant and then alone with Wood for an hour. That evening appellant telephoned Bauer and arranged a meeting with Wood, Bauer, and appellant, which promptly took place. Additional meetings and phone calls occurred, primarily between Bauer and appellant, throughout the month. During this time, Bauer maintained almost daily contact with DEA agents. They advised him on how to handle meetings and authorized him to record conversations.

After a failed attempt to carry out one major transaction, appellant and Bauer began discussing the proposed purchase and distribution of 1,500 pounds of marijuana at a meeting on February 4, 1981. Wood joined the others to discuss financing the transaction by putting up his two condominiums as collateral. After these discussions, Bauer placed a call to undercover agent Velazco, who spoke to appellant and Wood. During the call, negotiations were completed for the 1,500-pound transaction. Bauer later contacted Agent Velazco to arrange a meeting with appellant and Wood to look at the condominiums, receive the "front money," and check out the marijuana.

On the night of February 4, 1981, Agents Velazco and Perry, who represented himself to be the owner of the marijuana, met with Bauer, Wood, and appellant. The sale price of $200 per pound was set. The exchange of the condominiums for the marijuana was discussed and $12,000 in front money to be paid to Velazco and Perry was agreed upon. Wood hired Velazco to transport the marijuana to Chicago. During the meeting, appellant went outside with Bauer and Agent Velazco to look at the bale of marijuana hidden in the undercover vehicle.

The following morning, Agents Perry and Velazco met with Bauer, Wood, and appellant at the condominiums on Pine Island. The condominiums were inspected; Wood obtained the $12,000 front money; the quit-claim deed to the condominiums was prepared; and Bauer departed for Chicago. Appellant and Agent Velazco traveled in appellant's car to the warehouse where agents had stored the marijuana for inspection. Appellant tried to contact Wood by telephone, as previously agreed upon, but was unable to reach him. At that point, appellant was placed under arrest. Appellant was taken into custody and put through the general booking procedure which included fingerprinting and photographs.

During the course of the investigation, the United States Attorney's Office for the Middle District of Florida was apprised of the developments in the case. After consultation with that office following appellant's arrest, appellant was released without formal charges to prevent the immediate compromising of Bauer. Appellant was not taken before a magistrate and no complaint was filed. On March 19, 1981, 42 days after the initial arrest, an indictment against appellant was filed, based on the same conduct which led to the initial arrest, and a summons ordering appellant to appear be-

fore the court was issued. Appellant was convicted of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. sections 841(a)(1) and 846. The court sentenced appellant to three years incarceration.

## I. Entrapment and Government Conduct

 Appellant argues that his conviction was erroneous because there was entrapment or, in the alternative, the conduct of the government agents was so outrageous that due process was violated. An assessment of whether there was entrapment focuses on the predisposition of the defendant. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The jury was instructed on the issue of entrapment. In reviewing appellant's conviction in light of the jury's finding that appellant was not entrapped, the evidence of predisposition must be viewed in the light most favorable to the government.

The evidence of appellant's predisposition to commit the offense was more than sufficient. Appellant willingly attended several meetings with informant Bauer and made additional contacts by phone in order to arrange the transaction. Furthermore, appellant contacted others in an attempt to have them invest in the marijuana. Appellant participated willingly at all stages of the conspiracy.

An evaluation of appellant's challenge that the conduct of the government agents was so outrageous that due process was violated requires examination of the government conduct. The opinion in *United States v. Gianni*, 678 F.2d 956 (11th Cir.1982), presents a summary of the law in this circuit on government overinvolvement. The *Gianni* opinion emphasizes that while our court and the Supreme Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or our court. 678 F.2d 959–60. Law enforcement tactics including infiltration and the supplying of illegal substances do not violate the fundamental fairness mandated by the due process clause. *United States v. Russell*, 411 U.S. 429, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 374.

Government involvement in appellant's case falls far short of the degree of government participation which we approved of in *United States v. Tobias*, 662 F.2d 381 (5th Cir. Unit B 1981). Agents here merely provided the opportunity and marijuana for a transaction desired by appellant. Indeed, the present facts resemble those of *United States v. Gianni*, 678 F.2d 956, where agents contacted individuals they had encountered in prior work and offered to sell them large quantities of marijuana. This court found that such conduct did not violate the due process clause. In appellant's case, however, the government agents did not even make the initial contact. Viewing the totality of the circumstances, as prescribed by *Gianni*, 678 F.2d at 960, we do not find the involvement of the government agents outrageous or unconstitutional.

## II. Speedy Trial Act

 Appellant's second challenge to his conviction, that the 42-day period between his initial arrest and the issuance of his indictment violated the Speedy Trial Act, requires this court to define "arrest" for the purposes of the Act. The government admits that appellant was seized, temporarily taken into custody, photographed and fingerprinted before being released. There is no suggestion that appellant did not believe himself to be under arrest at that time. The government contends, however, that "arrest" in the Speedy Trial Act refers to that point at which a defendant is first charged with a crime. Since no complaint or formal charge was issued against appellant on February 5, 1981, the government argues that he was not "arrested" within the meaning of that Act.

The Speedy Trial Act was enacted primarily to ensure that defendants would receive the speedy trial guaranteed to them by the sixth amendment. Nevertheless, the rights of defendants under the Speedy Trial Act are not limited to those guaranteed by the Constitution. *United States v. Gonzalez*, 671 F.2d 441 (11th Cir.1982), *cert. de-*

*nied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). Thus, defining "arrest" for the purposes of the Speedy Trial Act presents a question of statutory interpretation.

Congressional intent is self-evident from the language of the Act:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges....

18 U.S.C.A. sec. 3161(b) (1982). The initial reading of the language of section 3161(b) suggests that "arrest" entails some accusation, and the intent of Congress is clarified in subsequent sections of the Act. In delineating the sanctions for violation of the Act, section 3162(a)(1) provides:

> If, in the case of any individual *against whom a complaint is filed* charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C.A. sec. 3162(a)(1) (emphasis added). This provision establishes that Congress intended the provisions of the Act to apply only if an individual was formally charged with an offense.

The district court logically concluded that until an individual is being held, either physically or legally, to answer to a charge, there is no circumstance upon which the purpose of the Act could work. The court explained:

> [T]he notion of the Speedy Trial Act is, that once the Government has made a charge and has placed a restraint upon a defendant, either physically or legally, by releasing him on bail or by filing a formal complaint, that it then takes on an obligation to proceed expeditiously to either process that charge or have it dismissed, and that when that hasn't occurred—that is to say, when there has been no release on bail or no formal complaint—then there is nothing which the Act would logically have an interest in speeding along.

Record, Volume 2 at 15. This conclusion comports with the rest of the Speedy Trial Act. For example, if charges are dismissed and later reinstated, the time between the dismissal and the reinstatement is not included in computing the time within which the trial must commence. 18 U.S.C. sections 3161(d) and 3161(h)(6).

In passing upon a sixth amendment right to speedy trial in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 969 (1982), the Supreme Court held that a charge was necessary to commence the running of the time. Since the Speedy Trial Act is founded on the sixth amendment, the *MacDonald* holding further supports our interpretation. Our decision also comports with the Eighth Circuit opinion in *United States v. Jones,* 676 F.2d 327 (8th Cir.1982), that arrest under the Speedy Trial Act contemplates a formal charge of a crime.

Having found that the statutory scheme establishes Congressional intent that the time period for the Speedy Trial Act should begin to run only after an individual is "accused," either by an arrest and charge or by an indictment, we AFFIRM the decision of the district court.