**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mitchell JANIK, Defendant-Appellant.**

No. 83–1469.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1983.

Decided Dec. 9, 1983.

As Amended Dec. 22, 1983.

Kimberly A. Sutherland, Chicago, Ill., for defendant-appellant.

Alan N. Grossman, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

POSNER, Circuit Judge.

Mitchell Janik appeals from his conviction for possessing two unregistered guns (a submachine gun and a sawed-off shotgun), in violation of 26 U.S.C. § 5861(d). The principal questions on appeal are whether the proceeding against him exceeded the time limits in the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.,* and whether the seizure of the guns in Janik's home violated the Fourth Amendment.

Janik was a deputy sheriff in Cook County, Illinois, assigned as a bailiff in the court division. He told his friend Heidemann, a Chicago policeman, that he had bought a submachine gun from a man he knew to have been a burglar, and asked Heidemann not to tell anybody about this. Later Janik invited Heidemann to see the gun in his apartment, and on March 26, 1981, they drove there together in Heidemann's police car. Heidemann meanwhile had gotten in touch with the federal Bureau of Alcohol, Tobacco and Firearms, and a team of Chicago police officers and federal agents were waiting in concealment outside the building when Janik and Heidemann arrived.

Janik unlocked the front door of the building, and as he and Heidemann entered the lobby Heidemann pressed the button in the side of the door's lock so that it would remain unlocked. They entered Janik's apartment and Janik took Heidemann into the kitchen, where the gun, which Heidemann recognized as a submachine gun, was lying disassembled on a table. (Janik had told Heidemann that he had disassembled the gun after firing it and had not been able to reassemble it.) Heidemann asked to use the bathroom. While inside it he tried to radio the team outside the building to come in and seize the gun, but he could not make radio contact. He then went to the front door of the apartment and opened it, and either while standing in the entrance or after stepping into the lobby he again radioed the team, this time making contact, and told them to come inside. Janik had followed him into the lobby and now asked him what he was doing. Without answering, Heidemann placed Janik up against the wall of the lobby, and then either he opened the door to the lobby to admit the team or they entered on their own, the door being unlocked. A police officer put handcuffs on Janik but the head federal agent ordered them removed unless Janik was to be arrested on state charges. Janik asked the agents and police to come into his apartment so that they would not be seen by the neighbors. The handcuffs were removed either before or immediately after Janik asked the officers to come in. A brief search was made of the apartment to see whether anyone else was in it (no one was). After receiving *Miranda* warnings Janik signed waivers of his right to counsel and to remain silent and consent forms authorizing a search of the apartment for unregistered guns. The apartment was then searched again and the sawed-off shotgun was found in a laundry bag in a closet.

The federal agents took away the guns but did not arrest Janik. The police, however, arrested him on suspicion of possessing a stolen gun (the submachine gun). The state charges were later dropped but on October 27, 1981, Janik was indicted on federal charges. He was arraigned on November 4, and on November 23 he moved to

* Hon. Robert A. Grant of the Northern District of Indiana, sitting by designation.

suppress the evidence seized on March 26. A hearing on the motion was scheduled for February 4, 1982, and then changed to February 5. When the parties showed up for the hearing they were told that the court had cancelled it and that it would be rescheduled for a later date. In the words of the district judge, "The case appears to have slipped into limbo following February 5, 1982." The judge's minute clerk had gone on maternity leave and, as the judge explained, "The court's new minute clerk joined the court's staff in late February 1982. With well over 400 cases on the court's docket, it is hardly surprising that the inactivity in *Janik* was not detected until mid-April." The hearing took place on April 28 and May 3, the last post-hearing brief was filed on August 6, and the judge then took the matter under advisement. But on November 12 she ordered the hearing reopened to take additional testimony on when the handcuffs had been removed from Janik, and further testimony was taken on December 2. Finally, on December 13, she denied the motion to suppress. Janik then moved to dismiss the indictment, on the ground that the Speedy Trial Act had been violated. The motion was denied. His trial, a bench trial, was held on January 18, 1983, on the basis of the record of the suppression hearing, as the parties had agreed. The judge found Janik guilty and sentenced him to eight months in prison for possession of the submachine gun and to five years probation and a fine of $2,000 for possession of the sawed-off shotgun.

The Speedy Trial Act required the government to indict Janik within 30 days after arresting him, 18 U.S.C. § 3161(b), which it did not do if his arrest on March 26 counts. An arrest by state officers on state charges does not start the running of the 30-day period. *United States v. Iaquinta,* 674 F.2d 260, 267–68 (4th Cir.1982); *United States v. Wilson,* 657 F.2d 755, 767 n. 17 (5th Cir.1981). Janik's detention in the lobby by a group that included federal as well as state officers was, as we shall see, a federal arrest, but it did not start the running of the 30-day period either. Although a literal reading of section 3161(b) supports Janik's argument that it did, there is abundant and we think persuasive case authority that an arrest does not start the 30-day period running unless a criminal charge is lodged, and no federal criminal charge was lodged against Janik until he was indicted. See, e.g., *United States v. Alfarano,* 706 F.2d 739, 741 (6th Cir.1983); *United States v. Candelaria,* 704 F.2d 1129, 1131 (9th Cir. 1983); *United States v. Sayers,* 698 F.2d 1128, 1131 (11th Cir.1983); *United States v. Jones,* 676 F.2d 327, 329–31 (8th Cir.1982).

The purpose of the Speedy Trial Act is to implement the Sixth Amendment's right to a speedy trial, see S.Rep. No. 1021, 93d Cong., 2d Sess. 1, U.S.Code Cong. & Admin.News 1974, p. 2407 (1974), a right designed to limit the time during which criminal charges are hanging over a person's head unresolved, see *United States v. Marion,* 404 U.S. 307, 317–18, 92 S.Ct. 455, 462, 30 L.Ed.2d 468 (1971). Therefore "no Sixth Amendment right to a speedy trial arises until charges are pending" against the person. *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). See also *United States v. Samples,* 713 F.2d 298, 301 (7th Cir.1983). After a person is arrested and before he is arraigned criminal charges are hanging over him in a palpable sense even if he is free on bond. But Janik was unconditionally released from federal custody immediately after being arrested and no federal criminal charge was filed against him at the time. Thus, until he was arraigned his situation was the same as that of anyone who knows that he is the target of a criminal investigation. The Speedy Trial Act does not protect the man whose peace of mind is disturbed because, though he is not under arrest or out on bail and no charge has been lodged against him, he is likely to be charged. And if he was arrested but moments later was released without being booked, it is the same, from the standpoint of the policies behind the Act, as if he had never been arrested. We would not let the government circumvent the Act by releasing an accused on the eve of arraignment

and immediately rearresting him; but that is not what happened here.

The difficult Speedy Trial Act issue in this case relates to the delay between Janik's arraignment on November 4, 1981, and his trial on January 18, 1983, 14½ months later. The Act allows only 70 days to elapse between arraignment and trial, 18 U.S.C. § 3161(c)(1), in addition to time that is "excludable" from the computation of delay under the various subsections of 18 U.S.C. § 3161. The parties agree that 42 days between the arraignment and the trial were not excludable. This leaves a "credit" of only 28 nonexcludable days before the 70-day allowance would be exhausted.

Some of the time consumed in getting to trial clearly was excludable, and we can confine our attention to three periods that may not have been. The first is the period of 70 days between February 5, 1982, when the parties appeared for the suppression hearing only to be told that it had been cancelled, and April 16, when a status conference was held, following the new minute clerk's discovery that the case had been inactive during this period, to schedule a new hearing. The second was a period of 68 days between September 5, 1982, and November 12. Section 3161(h)(1)(J) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." So far as the proceeding on the motion to suppress was concerned, that period ended on September 5, the thirtieth day after the last briefs were filed following the suppression hearing and the matter was taken under advisement by the district judge. November 12 was the day the judge ordered the suppression hearing reopened. The third period comprises the 31 days between the order to reopen the hearing and the disposition of the motion to suppress. If at least 29 days in any of these periods were not excludable, the indictment must be dismissed.

All three periods occurred in the course of proceedings on Janik's pretrial motion to suppress, so we begin our consideration with section 3161(h)(1)(F), which as amended in 1979 excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." The first two periods in question were entirely within the interval between the filing of the motion and the conclusion of the hearing, which as reopened did not conclude till December 2. But the phrase "other prompt disposition" implies that the court may not delay a criminal trial indefinitely by deferring a hearing on a pretrial motion indefinitely. The government does not, and could not, contend otherwise. See *United States v. Cobb*, 697 F.2d 38, 44 (2d Cir.1982); S.Rep. No. 212, 96th Cong., 1st Sess. 34, U.S.Code Cong. & Admin.News 1979, p. 805 (1979). It is hard to see how the disposition of Janik's motion can be called "prompt" when for more than two months the case was in limbo, as the judge put it, because her office had neglected to reschedule a hearing for which both parties had shown up. The fact that it was in limbo because of the number of other cases on the judge's docket may explain, but does not in a legal sense excuse, the delay. The delays in bringing criminal cases to trial that led to the enactment of the Speedy Trial Act were due not to federal district judges' being lazy or willful but to the congestion of their dockets. See *United States v. Nance*, 666 F.2d 353, 356 (9th Cir.1982); H.R.Rep. No. 1508, 93d Cong., 2d Sess. 16 (1974). Since the Act explicitly rejects "general congestion of the court's calendar" as a ground for an excludable continuance, 18 U.S.C. § 3161(h)(8)(C), it is unlikely that Congress meant such congestion to be a ground for excludable delay when no continuance was granted. The 70 days of nonexcludable time allowed by the Act, a period chosen after extensive legislative deliberations, provide some safety margin for the inevitable slips in getting a case to trial.

We can be more precise about the requirements of prompt disposition in this case. Section 3161(h)(1)(J) allows up to 30 days to be excluded while a matter is under

advisement by the court. Although this subsection does not refer to pretrial motions explicitly, so that it can be argued that subsection F ("prompt disposition") is the only provision applicable to delay in deciding such motions, the history of F refutes the argument. Section 3161(h)(1)(E) of the original Speedy Trial Act excluded "delay resulting from hearings on pretrial motions," but made no provision for the time between the filing of the motion and the holding of the hearing, or between the filing of the motion and the disposition of the motion if no hearing was held. The 1979 amendments changed E to F and added an unconditional requirement of prompt disposition after filing, S.Rep. No. 212, *supra,* at 33–34, 40–41, but there was no intention of thereby enlarging the 30-day period for consideration of any matter (including a motion) taken under advisement. The Senate Report states explicitly that the use of the words "prompt disposition" is not intended to permit circumvention of the 30-day requirement in J—an observation that would make no sense if F motions (that is pretrial motions) were not also subject to J. *Id.* at 34. A contrary conclusion would allow the judge to take more than 30 days to decide pretrial motions but not to decide any other type of motion or submission, however novel, difficult, and complex the issues it raised. This result would make no sense, and has been rejected. *United States v. Raineri,* 670 F.2d 702, 708 (7th Cir.1982); *United States v. Bufalino,* 683 F.2d 639, 642–44 (2d Cir.1982); *United States v. Cobb, supra,* 697 F.2d at 43; *United States v. DeLongchamps,* 679 F.2d 217, 220 (11th Cir.1982). If 30 days is too little to dispose of a particular pretrial motion, the judge can grant a continuance either on his own motion or on that of counsel for either party.

Thus, from the time the district judge took Janik's motion under advisement after the filing of the last post-hearing briefs on August 6 she had 30 days to decide it unless she granted a continuance under section 3161(h)(8)(A), which she did not do. Hence the period of excludable time for deciding the motion ended September 5.

We have treated the interval between November 12 and December 13 separately for two reasons. First, it can be argued that the period from November 12 (when the hearing was ordered reopened) to December 2 (when the reopened hearing was held) was excludable under section 3161(h)(1)(F) as a period between the filing of and hearing on a pretrial motion, and that the period from December 2 to December 13 (when the motion was finally denied) was a period of less than 30 days in length during which the motion was under advisement. But if, as noted earlier, the requirement of prompt disposition in section 3161(h)(1)(F) may not be circumvented by indefinitely deferring the scheduling of the hearing, no more may it be circumvented by ordering the hearing reopened more than 30 days after the matter has been taken under advisement.

Alternatively it can be argued that the district judge's action in ordering the hearing reopened was the grant of a continuance that created excludable time. It was indeed the grant of a continuance, but not every continuance creates excludable time. Only continuances based on "findings that the ends of justice . . . outweigh the best interest of the public and the defendant in a speedy trial" create excludable time. 18 U.S.C. § 3161(h)(8)(A). The district judge made no such findings when she ordered the hearing reopened. And while the required findings need not be entered at the same time as the grant of the continuance, see *United States v. Brooks,* 697 F.2d 517, 522 (3d Cir.1982), and cases cited there, here no findings were made until the judge denied Janik's motion to dismiss the case for violation of the Speedy Trial Act. That may well be too late. If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating

excludable time, which is clearly not the intent of the Act. But we need not decide in this case what the deadline should be for announcing the findings required by the Act. When the district judge in her opinion refusing to dismiss the indictment discussed the period from November 12 to December 13, she did not make an ends-of-justice analysis. Her primary reason for excluding this period was that it was excludable under subsections F and J, which it was not. She did say that 11 days in this period were alternatively excludable under section 3161(h)(8)(A), which is the ends-of-justice provision, "for the same reasons specified in" her discussion of another period. But incorporation by reference does not satisfy the Act's requirement of specific findings showing that exclusion is justified.

Although we have considered each period of delay separately, Janik's case for dismissal of the indictment is of course stronger if the three periods are viewed together. After having allowed the case to slip into limbo for more than two months, the judge should have been all the more determined to decide the motion to suppress within the 30-day period allowed for such decisions. Although the suppression issue is, as we shall see, somewhat complicated, the underlying facts were simple and the need for a further hearing should have emerged before the 30 days were up. Indeed, with the benefit of hindsight it is apparent that there was no need to reopen the hearing to take further evidence on the precise time when the handcuffs were removed; the judge's opinion, issued after the reopened hearing, treats the question both as still unresolved and as inessential to her decision—which it was.

■ Against all this the government argues that otherwise nonexcludable time may be excluded if "the ends of justice ... outweigh the best interest of the public and the defendant in a speedy trial." The problem is that this language comes as we have seen from the section of the Act that allows exclusion of "Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of"

either party "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). There must be "action" taken by the judge, namely a continuance, based on findings made by the judge. The judge in this case never granted a continuance to give herself more time to dispose of Janik's motion. She did, when she refused to dismiss the indictment, make findings that the ends of justice had warranted the delays, and we have already said that the findings required by the Act may be entered after the continuance is granted. But the continuance itself must be granted before the period sought to be excluded begins to run. Since the Act does not provide for retroactive continuances, *United States v. Carlone*, 666 F.2d 1112 (7th Cir. 1981), "a judge could not grant an 'ends of justice' continuance *nunc pro tunc,* providing after the fact justification for unauthorized delays. Rather, ... the district judge must consider the matter at the outset and determine whether the 'ends of justice' require that the trial be postponed." *United States v. Brooks, supra,* 697 F.2d at 522. See *United States v. Carrasquillo,* 667 F.2d 382, 386 (3d Cir.1981). A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the delay occurred.

The government cites *United States v. Regilio,* 669 F.2d 1169, 1172–73 (7th Cir. 1981), which permitted 81 days to be excluded while pretrial motions were pending even though the delay was attributable in part to a clerical error and even though no continuance had been granted, to show that this court recognizes a general "ends of justice" exception not tied to the granting of continuances. Although there is a pragmatic basis for such an exception—a continuance cannot be used to exclude delay caused by clerical oversight, because such delay is by definition unanticipated—the government's counsel admitted at oral argument that he could find no basis in the

Act's language or structure for such an exercise of judicial creativity.

The facts of this case are significantly different from those of *Regilio*. After the 30 days allowed by the Act for the disposition of a motion under advisement are excluded, the nonexcludable time in *Regilio* was 51 days, and since the defendant's trial had been held within 40 nonexcludable days (besides the 51 in question) of his arraignment the maximum "overage" was only 21 days (40 + 51–70), compared to 141 days in this case. Since *Regilio* does not cite section 3161(h)(1)(J), the court may not have thought that this excess violated the requirements of the Act. Moreover, the defendant in *Regilio* had filed not one but five pretrial motions. Multiple pretrial motions had also been filed in *United States v. Brim,* 630 F.2d 1307, 1313 (8th Cir.1980), on which *Regilio* relied. In specifying time limits for the disposition of pretrial motions, the Act refers to one motion rather than multiple motions. If 30 days of nonexcludable delay had been assigned to the disposition of all the pretrial motions in *Regilio* other than the first, the nonexcludable portion of the 81 days would have been only 21 days, which would not have been enough to push Regilio over the 70-day limit, since he had a 30-day credit. Furthermore, as pointed out in *United States v. Bufalino, supra,* 683 F.2d at 644 and n. 6, in both *Brim* and *Regilio* the multiple motions were not all filed at once, and it is possible that at no time was a single motion under advisement for more than 30 days. Our decision in *United States v. Raineri, supra,* 670 F.2d at 708, cites *Regilio* for the proposition that 30 days is indeed the limit of excludable delay for deciding a pretrial motion under advisement.

 The logical next question is whether the dismissal of Janik's indictment should be with or without prejudice. Dismissal without prejudice—meaning that the defendant can be reindicted—may seem a rather strange sanction for violating a statute aimed at minimizing delay; if the indictment is dismissed and the defendant is then reindicted and retried, the total delay will be much greater than if the first indictment had not been dismissed. But it is not a completely negligible sanction, viewed from a deterrent standpoint, since the grand jury may refuse to reindict and since even if it does the defendant may be acquitted. More important, Congress decided in 18 U.S.C. § 3162(a)(1), rightly or wrongly, to make dismissal without prejudice one of the sanctions for violating the Speedy Trial Act, and its decision is binding on us whatever we may think of its wisdom. It therefore will not do for a judge to say, as the district judge said in this case, that she is denying a motion to dismiss the indictment for violation of the Speedy Trial Act in part because if she granted the motion she would dismiss the indictment without prejudice and then the defendant would be worse off in the event that he was reindicted. A judge may not forgive a violation merely because the sanction that the legislature has provided for the violation seems silly.

 In determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this [Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1). The reference to "the court" is to the district court, not the court of appeals, and it is the district court therefore that should make the determination (subject of course to appellate review) unless the answer is so clear that no purpose would be served by a remand to the district court. As it is now almost two years since the defendant was arraigned, this may seem a strong case for ordering dismissal with prejudice. But against this factor must be set the follow-·ing facts: the defendant never manifested any desire to see the proceeding moved along any faster than it was; much of the delay was due to a clerical oversight, held to be a mitigating factor in *United States v. Carreon,* 626 F.2d 528, 533 n. 9 (7th Cir. 1980); and his offense was a grave one, punishable by a maximum prison sentence

of ten years, 26 U.S.C. § 5871, and he was found guilty of committing two such offenses. The Act's multi-factored standard for deciding whether dismissals shall be with or without prejudice invites an exercise of judicial discretion and thereby implies a limited scope of appellate review. See *id.* at 534. Although the district judge in this case stated that if there was a violation of the Speedy Trial Act it would not warrant dismissal with prejudice, this conclusion may have been colored by her view that there was no violation. We, on the contrary, have found a serious violation.

If the indictment were certain to be dismissed with prejudice on remand, thus barring reindictment, we would have no reason to discuss the other issues in Janik's appeal. But since reindictment is a possibility we ought to consider those of Janik's arguments that if accepted would require acquittal: not only his argument that the evidence was insufficient to prove his guilt beyond a reasonable doubt, but his argument that the evidence seized in his apartment should have been suppressed. Without the evidence and the leads it supplied he would have had to be acquitted. True, the guns were not placed in evidence, but government testimony that the guns were operable, testimony essential to convict Janik, was based on tests run on the guns by the Bureau of Alcohol, Tobacco and Firearms after they were seized. However, we need not consider the question, on which the precedents in this circuit are in some disarray, compare *United States v. Graham,* 638 F.2d 1111, 1114 (7th Cir.1981), with *United States v. Gamble,* 473 F.2d 1274, 1276–77 (7th Cir.1973), whether the initial search of the apartment to see whether there was anyone else in it was lawful; it led to nothing that was used against Janik at trial.

Although the guns were not seized pursuant to warrant, the Fourth Amendment—contrary to popular belief—does not say that warrants are required for searches or seizures. The Fourth Amendment forbids unreasonable searches and seizures and forbids general warrants but it does not purport to require a warrant in any case. Its framers were not worried about searches without warrants. See Taylor, Two Studies in Constitutional Interpretation 41 (1969). But the modern decisions state over and over again that law enforcement officers must have a good reason for not getting a warrant, especially when the search is of the home. See, e.g., *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). Once Heidemann was told by Janik that an unregistered gun was lying disassembled on Janik's kitchen table, there was nothing to prevent the authorities from getting a search warrant, and no reason is offered why one was not gotten. The guns were seized in Janik's home, not in a moving vehicle or under other circumstances where the evidence might have disappeared before a warrant could have been obtained. Nor was the seizure incidental to an arrest. The federal agents did not intend to arrest Janik, and anyway he was released before either gun was seized. The state officers did arrest him but did not seize the guns.

Nevertheless, no warrant was required for the seizure of either of Janik's unregistered guns. The seizure of the submachine gun invaded no interest that the Fourth Amendment protects. Under the older view, illustrated by the majority opinion in *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), the Fourth Amendment protects property interests in a narrow common law sense. Since Janik invited Heidemann—who moreover Janik knew was a police officer—into his home to see the gun, Heidemann was not a trespasser; and the seizure of the gun itself was not a trespass to a chattel, because Janik did not have a lawful property interest in the unregistered gun. Although Justice Brandeis's view that the Fourth Amendment protects privacy rather than just property, see *Olmstead v. United States, supra,* 277 U.S. at 478–79, 48 S.Ct. at 572–73 (dissenting opinion), has of course prevailed in the modern cases, see, e.g., *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v.*

*Kramer,* 711 F.2d 789, 792–93 (7th Cir.1983), it does not help Janik. A guest who stays within the part of the premises to which he is invited does not invade his host's privacy, as is shown by the cases discussed in *Coolidge v. New Hampshire,* 403 U.S. 443, 465–72, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971), which allow arresting officers to seize things in plain view without either a warrant or a justification for not having one. See also *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The fact that Heidemann got help from other officers in removing the submachine gun can make no difference. *United States v. White,* 660 F.2d 1178, 1183 (7th Cir.1981). Not only was the incremental invasion of privacy trivial, but if Heidemann was privileged to slip the gun underneath his jacket and leave the apartment we think he was also privileged to have a police escort to prevent interference by Janik.

■■■ The search that turned up the sawed-off shotgun in a laundry bag in a closet cannot be justified by Janik's inviting Heidemann into his kitchen to see the submachine gun; but valid consent is of course a substitute for a warrant. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Janik argues that the consent was involuntary because he was intimidated by the number of officers and by being handcuffed. But the judge found, not clearly erroneously, that whenever precisely the handcuffs were removed it was before he signed the forms. Even a statement given in custody is not per se involuntary, *United States v. Wiener,* 534 F.2d 15, 17 (2d Cir.1976), and Janik was no longer in custody. A law enforcement officer himself, he knew his rights and could not have been intimidated except by threats or by force, of which there is no hint.

Janik also argues that his consent, even if voluntary, was the fruit of a Fourth Amendment violation and therefore ineffective, citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). When Heidemann and the other Chicago police officers handcuffed Janik they were arresting him on suspicion of having committed a federal rather than state crime; for it was unclear to the officers, in light of Ill.Rev.Stat.1981, ch. 38, ¶ 24–2(c)(1), that Janik had violated the Illinois gun laws, and there is no indication that they then intended to arrest him for possession of stolen property. Because no Illinois statute explicitly authorizes an Illinois officer to arrest for a federal crime without a warrant, see Ill.Rev.Stat.1981, ch. 38, ¶¶ 2–12, 102–15, 107–2(1)(c), Janik argues that the arrest was illegal.

■■■ State and federal officers in Illinois often work together on apprehending persons suspected of federal crimes, yet we know of no case where a court invalidated an arrest, or suppressed evidence obtained as the fruit of an arrest, of such a person by an Illinois officer without a warrant. We infer that Illinois officers have implicit authority to make federal arrests. Cf. *United States v. Swarovski,* 557 F.2d 40, 43–49 (2d Cir.1977), and the broad reading of "offense" in Op.Ill.Atty.Gen. 82–016 (June 28, 1982) to include a traffic violation. It is true that the head federal agent told the police officers to release Janik, but this does not mean that they did not have at least apparent authority to arrest him. They acted on the basis of probable cause to think he had committed (and was continuing to commit) a federal crime and they released him when they were told that the federal agents did not want him arrested.

■■■ But even if the arrest was invalid under state law, the action of the state officers in arresting Janik was not an "unreasonable" seizure under the Fourth Amendment. See *Fisher v. Washington Metro Area Transit Authority,* 690 F.2d 1133, 1138 (4th Cir.1982); *Street v. Surdyka,* 492 F.2d 368, 372 (4th Cir.1974). If the federal agents had arrested Janik and were seeking to justify the seizure of the shotgun as an incident to that arrest, and if no federal statute authorized them to make such an arrest, then their authority if any under state law to arrest Janik for federal crimes would be an issue, because a search or seizure, to be justified as being incidental

to an arrest, must be incidental to a *lawful* arrest. See *United States v. DiRe,* 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948). But the basis for the seizure of the shotgun was not an arrest. The issue is not whether there was a valid arrest but whether the alleged misconduct by the state officers in arresting Janik for a federal crime invalidated the subsequent seizure of the shotgun during a search that Janik consented to. The criterion for such misconduct is federal, and is satisfied here. The police officers reasonably believed that the federal agents would want Janik arrested once Heidemann had confirmed that Janik had an unregistered weapon, and they therefore acted reasonably in arresting him even though they turned out to be mistaken and may have exceeded (though we think not) their authority under state law.

In any event, Janik's consent to search was not a fruit of the arrest. The evidence indicates that Janik invited the group of agents and officers into his apartment not because he had been arrested but because he did not want the neighbors to see them, and because, knowing that Heidemann had betrayed him, he knew the jig was up. The arrest was not causally related to the events that followed.

The last question we need discuss is whether there was enough evidence to convict Janik beyond a reasonable doubt of possessing an unregistered automatic weapon (the submachine gun), and an unregistered sawed-off shotgun, both capable of being operated. (On the required operability see *United States v. Woods,* 560 F.2d 660, 664–65 (5th Cir.1977) (shotgun); *United States v. Seven Miscellaneous Firearms,* 503 F.Supp. 565 (D.D.C.1980) (automatic weapons).) Although the guns were not placed in evidence, there was abundant evidence of what they were and unless the judge happened to be knowledgeable about firearms having them shown to her would not have helped her determine what they were. Janik told Heidemann that he had fired the submachine gun, which was enough to show that it was operable. The complaint that in test firing the shotgun the Bureau's testers did not make sure that its bore was smooth merely betrays confusion over what a shotgun is. A shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the projectile on its way out of the barrel. See 26 U.S.C. § 5845(d). Janik's unregistered shotgun undoubtedly was a shotgun and the statute does not require that its bore be smooth in the sense argued by Janik's counsel: free from dirt.

Janik argues that the only evidence that the guns were not registered to him was a federal agent's testimony that a phone check showed them not to be. Although the Bureau's certification that neither gun was registered to Janik was not put into evidence, there was testimony of its content and that was good enough, at least in combination with the evidence of the phone check. Cf. *United States v. Knop,* 701 F.2d 670, 672–74 (7th Cir.1983).

Janik's remaining contentions are too insubstantial to require discussion. The only error we find is the denial of the motion to dismiss the indictment for violation of the Speedy Trial Act, but that error requires that the judgment be reversed and the case remanded for further proceedings consistent with this opinion. Circuit Rule 18 shall apply.

REVERSED AND REMANDED.

FLAUM, Circuit Judge, concurring in the result.

The defendant in this case claims that his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982) ("Act"), were violated by both pre-indictment and post-indictment delay. Specifically, the defendant argues that the 216-day time lapse between his "arrest" on March 26, 1981, and his indictment on October 27, 1981, violated the Act. The defendant also contends that, in computing the seventy-day period between arraignment and trial that is allowed by the Act, the district court erred in excluding two major time lapses: (1) January 23, 1982, to April 15, 1982 (the period during which the district court failed to schedule the suppression hearing); and (2) Septem-

ber 5, 1982, to December 13, 1982 (the period during which the trial court had the defendant's motion to suppress under advisement in excess of the thirty-day advisement period·allowed by the Act). After reviewing all the procedural facts, I agree with the majority that the post-indictment delay exceeded the seventy-day limit that is allowed by the Act. Yet, while I concur in the result, I cannot adopt the majority's speedy trial analysis as applied to the post-indictment delay[1] in this case, and I write separately to set forth my approach.

It is clear that the Act allows a maximum of seventy days to pass between arraignment and trial.[2] Excludable from this seventy-day period is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). This section is ambiguous in two respects. First, the phrase "other prompt disposition" is not explained or defined. Second, it is unclear whether "the conclusion of a hearing" is a type of "prompt disposition" and thus has time restrictions. In light of this ambiguity, an explanation of this section appearing in a 1979 Senate Report is instructive:

[Section 3161(h)(1)(F)] provides exclusion of time from filing to the conclusion of hearings on or "other prompt disposition" of any motion. This later language is intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing. In using the words "prompt disposition", the committee intends to

make it clear that, in excluding time between filing and disposition on the papers, the Committee does not intend to permit circumvention of the 30-days, "under advisement" provision contained in Subsection (h)(1)(J). Indeed, if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days. Nor does the Committee intend that additional time be made eligible for exclusion by postponing the hearing date or other disposition of the motions beyond what is reasonably necessary.

S.Rep. No. 96–212, 96th Cong., 1st Sess. 34 (1979). This legislative history reveals that Congress intended the phrase "other prompt disposition" to apply only to the situations where a pretrial motion is decided on the papers filed, without a hearing. The Senate Report also indicates Congress's intent that, if a hearing or other disposition is postponed beyond what is reasonably necessary, the time of postponement cannot be excluded from the computation of the seventy-day maximum limit between arraignment and trial. Relying on this legislative history, the Second Circuit has enunciated the following useful rule, which I adopt: "[T]he period of allowable excludable delay applicable to a pretrial motion begins automatically with the making of the motion and runs for a period of time that is 'reasonably necessary' to conclude a hearing or to complete the submission of the matter to the court for decision." *United States v. Cobb,* 697 F.2d 38, 44 (2d Cir.1982).[3] *Accord*

---

1. The defendant's contention that the pre-indictment delay violated section 3161(b) of the Act is without merit, and I agree with the majority's discussion on this point.

2. Section 3161(c)(1) of the Act provides:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

3. Although the majority cites to the Senate Report, it confines itself to the face of the statute and determines whether the hearing in this case was "prompt." For a conflicting interpretation of the plain meaning of the statute, see *United States v. Stafford,* 697 F.2d 1368, 1373 (11th Cir.1983), where the court, by not considering the "reasonably necessary" language in the Senate Report and by looking only to the face of the statute, concluded that "there is no requirement in [§ 3161(h)(1)(F)] that the hearing be held promptly." *See also United States v. Campbell,* 706 F.2d 1138, 1143 & n. 12 (11th Cir.1983) (reaffirming *Stafford,* but declining to reach the question of whether there is a "reasonableness" limitation upon the ex-

*United States v. Smith,* 563 F.Supp. 217, 220 (D.Md.1983).

In the present case, the motion to suppress was filed on November 23, 1981. Between November 23, 1981, and January 22, 1982, counsel attempted, but failed, to draft stipulated facts for the trial court to use in ruling upon the motion. On January 22, 1982, the government acknowledged that the effort had failed and that a pretrial hearing was necessary. The hearing was scheduled for February 4, 1982, and then rescheduled for the next day, February 5. The trial court cancelled the hearing on February 5, and the parties were told that the hearing would be rescheduled by the court for a later date. I find that the postponements of the hearing up until February 5 were reasonably necessary. After February 5, the case became lost in an administrative shuffle and was found by the trial court's new minute clerk in mid-April. A status hearing took place on April 16. This significant period of indefinite postponement cannot be deemed reasonably necessary. The trial court thus erred in excluding this delay from the computation of the seventy-day allowable limit between arraignment and trial.

The next contested period of delay began after both parties submitted their post-hearing briefs. The defendant contends that the day on which the briefs were submitted, August 6, 1982, began the period during which the trial court had the motion under advisement. The defendant further argues that since, under section 3161(h)(1)(J) of the Act,[4] only thirty days of this period were excludable from the computation of the seventy-day allowable time limit between arraignment and trial, the trial court improperly excluded the period between September 5, 1981, and December 13, 1981, the date on which the motion was denied.

Courts in a number of circuits have ruled that section 3161(h)(1)(J) operates to exclude thirty days of the time during which a court has a pretrial motion under advisement (the period after the briefs dealing with a pretrial motion have been submitted and the hearing, if any, has been held). *See United States v. Bufalino,* 683 F.2d 639, 644–45 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983); *United States v. DeLongchamps,* 679 F.2d 217, 220 (11th Cir.1982); *United States. v. Scott,* 557 F.Supp. 990, 994 (W.D.Va.1983). Until 1982, this court had never discussed the issue.[5] Then, in *United States v. Raineri,* 670 F.2d 702, 708 (7th Cir.1982), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1983), this court cited to sections 3161(h)(1)(F) & (J) in deciding that, where a magistrate had pretrial motions under advisement for seventy-nine days, it was reasonable to exclude only thirty of those days from the computation of the allowable seventy days between arraignment and trial. Furthermore, in addition to the thirty days excludable under section 3161(h)(1)(J), it is clear that the statute allows further exclusion for any time that is granted through a continuance, provided that "the judge grant[s] such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

In the present case, the trial court took the suppression motion under advisement

---

clusion of pretrial motions resulting in hearings).

4. Section 3161(h)(1)(J) provides:
 The following period[ ] of delay shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time within which the trial of any such offense must commence:

 . . . . .

 delay reasonably attributable to any period, not to exceed thirty days, during which any

proceeding concerning the defendant is actually under advisement by the court.

5. In *United States v. Regilio,* 669 F.2d 1169, 1172 (7th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), this court determined only that § 3161(h)(1)(F) "does not specify the number of days excludable for prompt disposition of pretrial motions." No mention was made of the applicability of § 3161(h)(1)(J).

on August 6, 1982, the day on which the last post-hearing brief was filed. Based on *Raineri* and the other cases cited *supra,* I find that the following thirty days were excludable under section 3161(h)(1)(J). According to the trial judge, the motion continued under advisement from September 5, 1982, until November 12, 1982, when the judge ordered the hearing reopened so as to clarify the factual events at issue. Memorandum Order of January 18, 1983, at 6. Yet, there is no evidence in the record that during this period the trial court made a motion for a continuance sua sponte, or called a status hearing, or contacted the parties to let them know that the advisement period had been extended. The lack of such activity causes me to accept the majority's conclusion that section 3161(h)(8)(A) does not apply to the period between September 5, 1982, and November 12, 1982, and that this time lapse was not excludable from the computation of the allowable seventy-day period between arraignment and trial.

I disagree, however, with the majority's ruling that the period between November 12, 1982, when the hearing was ordered reopened, and December 13, 1982, when the motion was denied, was not excludable under section 3161(h)(8)(A). This section excludes time that is granted through a continuance, as long as the trial court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." The precise verbal formulation that is necessary in order for a district court to make the proper record to support

an exclusion under this section will vary from case to case. In *United States v. Edwards,* 627 F.2d 460 (D.C.Cir.1980), the trial court granted a continuance sua sponte after it was informed that counsel for one of the codefendants was ill and that the prosecutor had a conflicting trial schedule. The court made no explanation on the record until a month later, when it simply noted these two reasons during a status call. The District of Columbia Circuit found that this listing of the reasons for the continuance was adequate to exclude the time of continuance under section 3161(h)(8)(A). In the present case, the trial court held a status hearing on November 12 and explained to both parties that, in order to rule on the suppression motion, she needed to interrogate further one of the witnesses on the issue of the removal of the defendant's handcuffs. Transcript at 198. The majority recognizes that this hearing served to continue the case formally. I find further that the judge's explanation at the hearing was similar to that set forth by the trial court in *Edwards,* and it met the requirement, under section 3161(h)(8)(A), that the trial court set forth the reasons for finding that the ends of justice served by granting a continuance outweigh the interests in a speedy trial.[6] Thus, the period between November 12, 1982, and December 2, 1982, when the court reopened the hearing and took further testimony, was excludable under section 3161(h)(8)(A).[7] Furthermore, from December 3, 1982, until December 13, 1982, when the court denied the motion, the court once again had the motion under advisement. Since Congress clearly intended that such periods be excludable from the computation of the seventy-day

6. Arguably, the trial court's statement of the reasons for a continuance is inadequate under § 3161(h)(8)(A) because it does not show that the court actually weighed the ends of justice against speedy trial interests. I find, however, that the status hearing called by the trial court in this case, at which the court emphasized the significance of the coercion issue to the resolution of the suppression motion, was a sufficient indication that the court had performed the necessary weighing process.

7. The majority states that the continuance granted at the November 12 status hearing did not create excludable time because the district court did not make findings that the ends of justice outweigh speedy trial interests. While I concede that the recording of such findings would be optimal and would have been preferred in this case, I do not read § 3161(h)(8)(A) as mandating that these findings be recorded.

allowable period,[8] and since the Act does not specifically limit a judge to one period of advisement for each motion, I find that the period from December 3, 1982, to December 13, 1982, was excludable under section 3161(h)(1)(J).

In light of the nonexcludable delays that accrued, first, between February 5, 1982, and April 16, 1982, and second, between September 5, 1982, and November 12, 1982, I conclude that the seventy-day limit as prescribed by section 3161(c)(1) was exceeded in this case and I concur with the majority's finding of a speedy trial violation. I turn now to the majority's examination of the three factors that the trial court will consider in deciding whether this case should be dismissed with or without prejudice. I accept the majority's statements regarding the first factor, the severity of the offense. With regard to the remaining two factors, however, my views differ from those of the majority. First, the facts and circumstances of this case reveal that once the trial judge became aware of the misplacement of the case, she took immediate steps to schedule the suppression hearing. Also, the next contested delay was the result of scrupulous review by the trial court. During neither of the two contested periods did the defendant bring the delay to the attention of the court. Second, the defendant has shown no prejudice caused by the delays, and it cannot be concluded that his defense would be prejudiced by reprosecution.

Finally, I accept the majority's discussion of the other issues in this case, except for the question of the legality of the defendant's arrest. In view of our determination that the defendant's consent to a search of his apartment was not a fruit of the arrest, any examination of the legality of the arrest is unnecessary.

**8.** *See supra* note 4.