**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas J. HENDERSON, Scott O.**
**Thornton and Ruth Freedman,**
**Defendants-Appellants.**

**Nos. 83–1075, 83–1076 and 83–1112.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1984.

Decided Nov. 5, 1984.

Opinion on Denial of Rehearing and
Rehearing In Banc March 7, 1985.

Ferguson, Circuit Judge, filed a dissenting opinion, and filed an opinion dissenting from the denial of rehearing.

Sidney M. Glazer, Acting Chief, Appellate Section, Washington, D.C., for plaintiff-appellee.

Paul G. Sloan, Denise Anton, Serra, Perlson, Metcalf & Murko, Alex Reisman, San Francisco, Cal., for defendants-appellants.

Before DUNIWAY, SKOPIL, and FERGUSON, Circuit Judges.

DUNIWAY, Circuit Judge:

Henderson, Thornton, and Freedman appeal from their criminal convictions for conspiracy, manufacture, sale and possession of controlled substances (methamphetamine and phenyl-2-propanone). They argue that (1) unreasonable delays in the disposition of pretrial suppression motions violated their rights under the Speedy Trial Act; (2) use of an electronic beeper violated their Fourth Amendment privacy rights; and (3) a search warrant affidavit did not establish probable cause. We affirm.

FACTS:

In February 1980, Henderson (under the alias "Richard Martin") ordered from Buckeye Scientific Co. of Columbus, Ohio, chemicals that could be used to produce methamphetamine and phenyl-2-propanone, which are controlled substances listed in Schedule II and prohibited by 21 U.S.C. § 841(a)(1). This order triggered Drug Enforcement Agency attention. In April, Henderson and co-defendant Bell rented a private plane, flew from California to Ohio, and accepted delivery of the chemicals at a hotel parking lot. Henderson telephoned Thornton's house from the hotel. Henderson ordered more chemicals, for June pickup. An agent got a warrant from a U.S. Magistrate in Columbus, authorizing installation of an electronic beeper transmitter in one of the chemical containers. Henderson drove from California to Ohio, picked up the chemicals on June 24, and headed homeward. Agents following by car and plane lost the beeper signal.

Agents had located Henderson in California, however, by a Modesto post office box used in business dealings with Buckeye. They also watched Thornton and had discovered phone calls between them, and also linked Thornton with Freedman and Bell. Agents searched for the beeper by air and, on July 15, picked up the signal from Freedman's house near Watsonville, California. They got a search warrant, raided the house on the 17th, and found the suspected drug factory.

On August 27, 1980, a Grand Jury indicted the appellants on a variety of charges involving the manufacture and possession with intent to distribute methamphetamine and phenyl-2-propanone. On July 21, 1982, Thornton, later joined by the other appellants, moved to dismiss for violation of the Speedy Trial Act. The district court held a hearing on the motion and denied it on October 8, 1982. Thornton also filed a petition for writ of mandamus on the same grounds to this court, which denied it. *Thornton v. U.S. District Court for the Northern District of California*, 9 Cir., order filed November 8, 1982, No. 82–7624.

After a trial, a jury convicted the three defendants of conspiracy to manufacture and possess with intent to distribute methamphetamine and phenyl-2-propanone, 21 U.S.C. § 846; Thornton and Freedman of manufacture and possession with intent to distribute methamphetamine, 21 U.S.C. § 842(a)(1); and Henderson of two counts of travelling interstate with intent to promote the manufacture and possession of methamphetamine, 18 U.S.C. § 1952(a)(3). The district court severed the case of co-defendant Bell, the pilot for the April trip, who was tried separately and acquitted.

## I. SPEEDY TRIAL ACT REQUIREMENTS.

The Speedy Trial Act requires that trial begin within 70 days of the latest indictment, information, or appearance. 18 U.S.C. § 3161(c)(1). All agree that the clock started on September 3, 1980, when defendant Bell was arraigned. Trial did not start until November 1, 1982, some 789 days later. After a hearing on the appel-

lants' motion to dismiss for Speedy Trial Act violations, the district court ruled that at most 66 days of the delay (specifically, 48 days from 9/3/80 to 10/22/80, 4 days from 1/15/82 to 1/19/82, 5 days from 1/20/82 to 1/25/82, and a tentative 9 days from 1/25/82 to 2/3/82) were not excludable time and, therefore, there was no violation. (Memorandum and Order of October 8, 1982.) The appellants argue that 303 to 394 days of the delay were nonexcludable and that the district court should have dismissed the indictment with prejudice under § 3162(a)(2).

■ The standard of review in Speedy Trial appeals is "clear error" in the district court's factual findings and *de novo* review of questions of correct legal standards. *United States v. Nance,* 9 Cir., 1982, 666 F.2d 353, 356.

A. *Pretrial Motions.*

The Act provides, 18 U.S.C. § 3161(h)(1)(F):

> (h) The following periods of delay *shall be excluded* in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> > (1) *Any period* of delay resulting from other proceedings concerning the defendant, including but not limited to—

> > · · · · ·

> > (F) *delay resulting from any pretrial motion,* from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion;

> · · · · ·

(Emphasis ours.)

■ The trial judge excluded most of the time as pretrial motion delays under that section. The appellants argue that the court erred; that it could exclude only delays that were "reasonably necessary." The government points out that the statute contains no such requirement and argues that such a requirement is undesirable.

Without expressly addressing this question, we have treated the exclusion as auto-matic. *See, e.g., United States v. Van Brandy,* 9 Cir., 1984, 726 F.2d 548, 551–52; *United States v. Manfredi,* 9 Cir., 1983, 722 F.2d 519, 524. Several other circuits exclude pretrial motion time automatically. *See, e.g., United States v. Horton,* 5 Cir., 1983, 705 F.2d 1414, 1416; *United States v. Stafford,* 11 Cir., 1983, 697 F.2d 1368, 1373 & n. 4; *United States v. Fogarty,* 8 Cir., 1982, 692 F.2d 542, 545; *United States v. Brim,* 8 Cir., 1980, 630 F.2d 1307, 1312. Some circuits, however, have adopted a "reasonably necessary" standard. *See, e.g., United States v. Novak,* 3 Cir., 1983, 715 F.2d 810, 819–20; *United States v. Cobb,* 2 Cir., 1982, 697 F.2d 38, 43–44.

On its face, the statute excludes delays resulting from pretrial motions without qualification. Condensed, the language is "The following periods ... shall be excluded ...: Any period of delay ... including ... delay resulting from any pretrial motion, from the filing of the motion to the conclusion of the hearing on, or other prompt disposition of such motion." It does not say "any reasonable period of delay." The word "prompt" applies only to dispositions other than by hearing. *Stafford,* 697 F.2d at 1373 & n. 4.

Congress knew how to require that a period of delay be reasonable when it wished to do so, see § 3161(h)(7): "Any reasonable period of delay when the defendant is joined for trial with a defendant as to whom the time for trial has not run...." We note that § 3161(h) contains paragraphs (1) through (6), every one of which except (6) begins with the words "Any period of delay," and paragraph (6) uses the same words, though not at the beginning. The difference between (7) and (1) through (6) is a strong indication that exclusion of the periods defined in (1)–(6) was intended to be automatic.

In general, the legislative history supports this view. The House Committee reported its "intention that potentially excessive and abusive use of this exclusion be precluded by district or circuit guidelines, rules, or procedures relating to motions practice." H.R.Rep. No. 390, 96th Cong., 1st Sess. 10, *reprinted in* 1979 U.S.Code Cong. & Ad.News 805, 814. Similarly, the Senate Committee reported that "if basic standards for prompt consideration of pretrial motions are not developed, this provision could become a loophole which would

undermine the whole Act," making this "an appropriate subject for circuit guidelines" pursuant to § 3166(f). S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979). *See generally* Plan for Prompt Disposition of Criminal Cases, United States District Court for the Northern District of California, part II § 6, West's Calif.Rules of Court 669, 671 (1984). Congress did not indicate that § 3161(h)(1)(F) itself required or ensured prompt or otherwise time-constrained hearing of pretrial motions.

The Senate Committee repeatedly referred to the § 3161(h)(1)(F) exclusion as "automatic," S.Rep., *supra,* at 33, 34, and the courts in *Horton, Stafford, Fogarty,* and *Brim,* all *supra,* also read the statute this way. *See, e.g., Stafford,* 697 F.2d at 1373 & n. 4.

The Senate Committee, however, noted that it did not "intend that additional time be made eligible for exclusion by postponing the hearing date or other disposition of the motions beyond what is reasonably necessary." S.Rep., *supra,* at 34. The courts in *Novak,* 715 F.2d at 819–20, and *Cobb,* 697 F.2d at 43–44, relied on this expression of legislative intent to hold that § 3161(h)(1)(F) excludes only the time "reasonably necessary" for the disposition of pretrial motions.

We do not agree. It is important that the court and the parties know when the clock stops running under the Act. It is even more important that they know when it starts again. But if the start is to be at the point when the passage of time becomes "unreasonable," even if the period of delay mentioned in the statute has not expired, neither the court nor the parties can know where they stand. Moreover, there are many cases, such as the one before us, in which the outcome of the defendants' pretrial motions may effectively dispose of the outcome at trial. Defendants are entitled to the opportunity to explore a variety of attacks using the pretrial motion process, and to thoughtful consideration of these issues. The language of § 3161(h)(1)(F) does not show that Congress intended to restrict this process, and we decline to write conditions into the provision that would pressure trial courts to give short shrift to pretrial litigation, under the threat of dismissal of criminal indictments.

We are aware that in *Van Brandy,* 726 F.2d at 551, we quoted the following language from the Second Circuit's opinion in *Cobb* (697 F.2d at 46):

We accept, instead, the government's view that a pretrial motion triggers an automatic exclusion, with the qualification, however, that the amount of time eligible for exclusion may not be extended by postponing the hearing date or other disposition of the motion beyond what is reasonably necessary for processing the motion.

726 F.2d at 551. The portion of that language regarding "postponing the hearing date ... beyond what is reasonably necessary" is dictum, as is shown by what we said next:

There is no suggestion here that the hearing date, continued with the consent of all parties, was unreasonably delayed. *Id.* We also note that we next cited with approval *Stafford* and *Brim, supra,* both of which exclude the time of pendency of pretrial motions automatically. We decline to read § 3161(h) as if it said "any reasonable period of delay" instead of "any period of delay," or to read § 3161(h)(1)(F) as if it said "reasonable delay resulting from any pretrial motion" instead of "delay resulting from any pretrial motion."

The district court correctly excluded all of the time during which pretrial motions were pending.

### B. *Continuances.*

■ Section 3161(h)(8)(A) excludes "Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." It also requires that the judge set forth his reasons in the record. It does not, however, require that this be contemporaneous, and we have recognized that the trial court has two opportunities to make the required record: when granting the continuance and when reviewing a Speedy Trial claim. *United States v. Bryant,* 9ʹ Cir., 1984, 726 F.2d 510, 511; *United States v. Perez-Reveles,* 9 Cir., 1983, 715 F.2d 1348, 1352. *Accord United States v. Edwards,* D.C.Cir., 1980, 627 F.2d

460, 461. *Cf. United States v. Frey*, 9 Cir., 1984, 735 F.2d 350, 353, which notes that careful contemporaneous consideration is sufficient even though the findings are recorded later. The legislative history specifies that trial courts may grant excludable continuances to allow defense counsel to prepare motions. H.R.Rep. No. 390, *supra* at 12, *reprint* at 816; S.Rep., *supra*, at 33–34. That was the reason for one of the continuances here.

The judge stated his reasons for the continuances in his Memorandum and Order Denying Motion to Dismiss. They are the kinds of reasons listed in subparagraph (B)(ii) and (iv) of § 3161(h)(8), and we find them sufficient to justify his conclusion that the times involved in the continuances were excludable.

## II. FOURTH AMENDMENT CHALLENGE TO USE OF ELECTRONIC BEEPER.

The appellants contend that the use of an electronic beeper to locate the container of non-contraband chemicals at the Watsonville house violated their right to privacy under the Fourth Amendment. The district court, they argue, should have stricken the beeper-supplied information from the search warrant affidavit for the July 17 raid.

The agents installed and monitored the beeper pursuant to the order of a U.S. Magistrate in Ohio. The district court rejected the appellants' pretrial attacks on this order. It did not rely on the validity of the order, but on the rule in this circuit that beeper monitoring is not a search and requires no warrant. *See United States v. Taylor*, 9 Cir., 1983, 716 F.2d 701, 706; *United States v. Brock*, 9 Cir., 1982, 667 F.2d 1311, 1321–22; *see also United States v. Hufford*, 9 Cir., 1976, 539 F.2d 32, 34. However, the Supreme Court has recently decided that tracing a beeper signal to a place where there is a reasonable expectation of privacy, such as a home, is a search and requires a warrant. *United States v. Karo*, 1984, — U.S. —, —, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984). We consider the effect of *Karo* on this case.

 We note first that Henderson has no standing to challenge the monitoring of the beeper in the Watsonville house because he had no reasonable expectation of privacy in Thornton's and Freedman's home. *See United States v. Karo*, — U.S.

at —, 104 S.Ct. at 3305; *Rawlings v. Kentucky*, 1980, 448 U.S. 98, 104–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633.

We note second that the magistrate's order may have been a valid warrant under *Karo*. The supporting affidavit described the object into which the beeper was to be placed, the circumstances that led agents to wish to install the beeper, and the length of time for which beeper surveillance was requested. *See United States v. Karo*, — U.S. at —, 104 S.Ct. at 3305. The district court did not consider the validity of the order because, at that time, warrantless monitoring was permitted. We, too, need not determine the validity of the order as a warrant under *Karo*, because it is not decisive in this instance.

 Whether courts should apply new rules in criminal cases retroactively depends on "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno*, 1967, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199; *see Solem v. Stumes*, 1984, — U.S. —, —, 104 S.Ct. 1338, 1341–42, 79 L.Ed.2d 579 (1984). The first factor depends on whether the new constitutional principle is designed to enhance fact-finding at trial. *Solem*, — U.S. at —, 104 S.Ct. at 1342. The purpose of warrant requirements is to protect Fourth Amendment privacy rights. The application of the exclusionary rule in the Fourth Amendment context is "entirely unrelated to the accuracy of the final result." *Ibid.*; *see United States v. Leon*, 1984, — U.S. —, —, 104 S.Ct. 3405, 3412–13, 82 L.Ed.2d 677 (1984). The second factor depends on whether law enforcement authorities justifiably relied on a prior rule of law that is different from that announced by the decision whose retroactivity is at issue. *Solem*, — U.S. at —, 104 S.Ct. at 1343. Here, controlling Ninth Circuit authority clearly did not require a warrant to monitor a beeper transmission from a private home. Third, retroactive application of *Karo* would have a disruptive effect on the administration of justice. *See Solem*, — U.S. at —, 104 S.Ct. at 1345. It would require reassessment of the validity of pre-*Karo* search warrants based, in some part, on information from warrantless monitoring of beepers in private places.

■ Moreover, even if the appellants all had standing, even if the beeper order were found invalid, even if *Karo*'s warrant requirement should apply retroactively, and even if the search warrant affidavit were insufficient without the beeper information, the outcome is controlled by the Supreme Court's recent decision that the exclusionary rule does not apply to the fruits of searches made in reasonable, good faith reliance on the validity of defective search warrants. *United States v. Leon, supra.* Here, the search warrant was based on a probable cause determination that comported fully with applicable legal standards at that time. Therefore, the agents reasonably relied on that warrant when they searched the Watsonville house and discovered the controverted evidence. The agents obtained the warrant in good faith, and they acted within its scope.

### III. SUFFICIENCY OF THE SEARCH WARRANT AFFIDAVIT.

The appellants contend that the July 17, 1980 search warrant did not establish probable cause to believe that controlled substances and other drug laboratory indicia were at the Watsonville house.

■ In this case, the affidavit is sufficient to establish probable cause; the stated facts support the magistrate's conclusion that there was probable cause to believe that the evidence would be found in the stated location. *See United States v. Taylor*, 716 F.2d at 705–06; *United States v. Hendershot*, 9 Cir., 1980, 614 F.2d 648, 654; *United States v. Martinez*, 9 Cir., 1978, 588 F.2d 1227, 1234.

*United States v. Taylor* is closely in point. There, the affidavit described: (1) the suspect's history of involvement with drug manufacture; (2) suspicious transactions with a chemical supply store and an expert chemist's opinion that the particular chemicals bought were precursors for illegal drugs, which, as here, served as the basis of a warrant to install and track an electronic beeper; and (3) information about tracking the beeper to the place for which the search warrant was sought. The affidavit was held to establish probable cause to believe that the agents would find evidence of drug-related activity. 716 F.2d at 706. The affidavit here is at least as persuasive as the *Taylor* affidavit. We hold that it established probable cause for

a warrant to search the Watsonville property.

■ Furthermore, the fruits of the Watsonville search would be admissible even if a court later found that the affidavit was not sufficient to establish probable cause, if the agents acted in reasonable, good faith reliance on the warrant. *See United States v. Leon, supra.*

Affirmed.

FERGUSON, Circuit Judge, dissenting:

I dissent. The majority holds today that any period of delay created by the pendency of a pretrial motion, whether reasonable in length or not, is excludable time under section 3161(h)(1)(F) of the Speedy Trial Act. 18 U.S.C. §§ 3161 *et seq.* I disagree. The majority opinion sets the Speedy Trial Act on its head and will allow trial judges to delay ruling on pretrial motions indefinitely.

In holding that even unreasonable delay is excludable time under section 3161(h)(1)(F), the majority relies primarily on the face of the statute and notes that "Congress knew how to require that a period of delay be reasonable when it wished to do so." Maj. op. at 622. In *Heckler v. Edwards*, —— U.S. ——, 104 S.Ct. 1532, 1538, 79 L.Ed.2d 878 (1984), however, the Supreme Court instructed that we are not to give surface literal meaning to a statutory provision when that interpretation is not consistent with the "sense of the thing." The "sense" of the Speedy Trial Act is to insure defendants a speedy trial.

I agree with Judge Keeton in *United States v. Hawker*, 552 F.Supp. 117 (D.Mass.1982):

If applied literally, § 5(b)(1)(F) [of the Final Plan for Prompt Disposition of Criminal Justice within the District of Massachusetts] would exclude all time between filing and conclusion of hearing on any pretrial motion, without regard for how long the period might be and even if hearing had been intentionally deferred to avoid pressures of the speedy trial requirement. *Such an interpretation of the Plan would cause it to be in noncompliance both with the manifest objective of the Speedy Trial Act and with the text of 18 U.S.C. § 3161(h)(1)(F), referring to "prompt disposition."* I conclude that

§ 5(b)(1)(F) of the Plan is subject to a qualification, not stated explicitly anywhere in the text *but plainly implicit in the sense of the entire Plan*, that the period of excludable delay under this provision shall not be longer than is consistent with a reasonably prompt hearing.

*Id.* at 124–25 (footnote omitted) (emphasis added).

The majority adopts what it calls the "automatic" exclusion rule of other circuits. The cases cited by the majority, however, do not hold that *unreasonable* pretrial delay is automatically excludable. Indeed, one of the cases cited by the majority, *United States v. Horton,* 705 F.2d 1414 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983), specifically notes that an unreasonable delay might justify deviating from the automatic exclusion rule:

It is true that there follows a reference to "other prompt disposition" of the motion, one that might be taken to imply that such matters should be promptly disposed of and that might justify, in an egregious case, disregarding some portion of the pendency period. Such a case might be presented by repeated unsuccessful requests for hearings or by other credible indication that a hearing had been deliberately refused with intent to evade the sanctions of the Act. Nothing of the sort is evident here.

*Id.* at 1416. And in *United States v. Campbell,* 706 F.2d 1138 (11th Cir.1983), the Eleventh Circuit backed away from the seemingly absolute exclusion language it used in *United States v. Stafford,* 697 F.2d 1368 (11th Cir.1983):

In *United States v. Cobb,* 697 F.2d 38, 43–46 (2d Cir.1982), the Second Circuit superimposed a "reasonableness" limitation upon the open-ended exclusion for pretrial motions resulting in hearings.... Because we find the delay from April 3 to May 11 was under the circumstances of this case reasonable, we need not decide whether, as the *Cobb* court suggests, exclusion might sometimes be inappropriate if the delay before the hearing is held unreasonable.

706 F.2d at 1143 n. 12. Similarly, neither of the two cases from the Eighth Circuit, *United States v. Fogarty,* 692 F.2d 542 (8th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983) (61-day delay pending pretrial motions), nor

*United States v. Brim,* 630 F.2d 1307 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981) (57-day delay pending pretrial motions), address a claim that delay from a pretrial motion should have been excluded because the delay was unreasonable.

Thus, the majority becomes the first court actually confronted with the issue to reject a reasonableness limitation for section 3161(h)(1)(F). In so doing, the majority dismisses the holding of the Second and Third Circuits in *United States v. Novak,* 715 F.2d 810, 820 (3rd Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984), and *United States v. Cobb,* 697 F.2d 38, 44 (2d Cir.1982), as well as our language in *United States v. Van Brandy,* 726 F.2d 548, 551 (9th Cir.1984). *See also United States v. Janik,* 723 F.2d 537, 543 (7th Cir.1983) ("[T]he phrase 'other prompt disposition' implies that the court may not delay a criminal trial indefinitely by deferring a hearing on a pretrial motion indefinitely. The government does not, and could not, contend otherwise.").

I believe that the "reasonably necessary" approach adopted by the Second and Third Circuits and approved by this circuit in *Van Brandy* is correct and is compelled by the legislative history of the Act.

Congress recognized that section 3161(h)(1)(F) could become the exception to the Speedy Trial Act that swallowed the rule. The Senate Committee warned that "if basic standards for prompt consideration of pretrial motions are not developed, this provision could become a loophole which could undermine the whole Act." S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979). The Senate Committee went on to state it did not "intend that additional time be made eligible for exclusion *by postponing the hearing date* or other disposition of the motions *beyond what is reasonably necessary.*" *Id.* (emphasis added). This language clearly indicates that, contrary to the majority's interpretation, the "prompt disposition" language of section 3161(h)(1)(F) was intended to impose a reasonableness limitation both on time excluded pending dispositions by hearing and that excluded pending dispositions other than by hearing.

The majority today opens the door for trial courts to circumvent the constraints of the Speedy Trial Act by any number of unreasonable pretrial delays. It does so by

ignoring the legislative history of the Speedy Trial Act and the well-reasoned opinions of every other circuit that has directly addressed the issue. While I sympathize with the majority's search for a *per se* rule, *see* maj. op. at 623, I cannot agree that the desire for an "easy" rule can justify the abrogation of the major purpose of the Speedy Trial Act—to insure the defendant a speedy trial. I would reverse.

### ORDER

The petition for a rehearing is denied. Judge Ferguson votes to grant the petition for a rehearing, and files a dissent from denial of a rehearing.

The petition for a rehearing and suggestion of a rehearing in banc has been delivered to each of the active judges of this court. No active judge has called for a vote on the suggestion of a rehearing in banc. The suggestion of a rehearing in banc is rejected.

This order, and Judge Ferguson's dissent, are to be published.

FERGUSON, Circuit Judge, dissenting:

I dissent from the denial of the petition for rehearing in this case.

The opinion holds that trial courts may circumvent the constraints of the Speedy Trial Act by any number of unreasonable delays. Even more surprising, the government not only concedes—but argues vigorously in its brief—that district court judges, since the passage of the Act, have the right to delay any hearing or decision on any pretrial motion, for as long as they want, for whatever reason they want. Calendar congestion; indecision; a lost file; or no reason at all, each suffices to postpone decisions indefinitely. Any excuse, in fact, leaves the government with no means of pursuing a prosecution.

That is exactly what happened to the government in this case. Defendants filed their first pretrial motion on November 3, 1980. The court finally held a hearing on that motion on March 25, 1981. The court, however, failed to make up its mind until ten months later. The court's ruling was finally filed on January 19, 1982.

The government's concession that this delay does not, under any circumstances, violate the Speedy Trial Act, leaves prosecutors defenseless against district court or defense instigated delays. It forecloses the government from seeking a writ of mandamus to compel a district court judge to decide a pretrial motion, to set a trial date, or to do anything else listed in the excludable time provisions of the Speedy Trial Act. 18 U.S.C. § 3161(h).

The defendant, of course, retains his or her rights under the Sixth Amendment, including the right to a speedy trial. U.S. Const. amend. VI. By its own hand, however, the government divests itself of its own right to pursue timely and vigorously its own prosecutions.