**UNITED STATES of America,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**Jack Leroy GALLARDO,**
**Defendant-Appellant,**
**Cross-Appellee.**

**Nos. 84–1167, 84–1176.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 1985.

Decided Oct. 11, 1985.

---

Lamond C. Mills, U.S. Atty., Ruth L. Cohen, Asst. U.S. Atty., Las Vegas, Nev., and Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee, cross-appellant.

John Momot, Jr., Las Vegas, Nev., for defendant-appellant, cross-appellee.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

The United States appeals from the district court's dismissal under the Speedy Trial Act (STA), 18 U.S.C. §§ 3161–3174 (1982), of its indictment charging Jack Leroy Gallardo, Jr., with interference with commerce by threats or violence, 18 U.S.C. § 1951 (1982), and embezzlement from a savings and loan association, 18 U.S.C. § 651 (1982). The district court dismissed Gallardo's indictment based upon violation of the STA's 70-day indictment-to-trial limitation provision, 18 U.S.C. § 3161(c)(1).[1] The government contends that in reaching

---

1. Section 3161(c)(1) provides that: "[T]he trial of a defendant ... shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Section 3161(h) lists eight different types of periods that are excluded from the 70-day time limit.

its decision, the district court employed an incorrect method of computing excludable delay under the STA. This court has jurisdiction over the government's appeal under 18 U.S.C. § 3731 (1982). We reverse and remand.[2]

## FACTUAL BACKGROUND

### A. Proceedings in the District Court

Gallardo was originally indicted on November 10, 1982 on three counts of interference with commerce by threats or violence and six counts of bank embezzlement. He was arraigned on those charges on November 12, 1982. While those charges were pending, the district court granted six continuances under the STA's "ends of justice" provision, 18 U.S.C. § 3161(h)(8). Section 3161(h)(8) provides that:

> The following periods of delay shall be excluded in computing the time within which ... [a criminal] trial must commence:
>
> .... Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continu-

ance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8).

All of the continuances were requested jointly by both parties, based upon specific reasons relating to their scheduling needs and ability to prepare for trial. All but the second request were initiated and drafted by Gallardo's attorney. The district court judge issued separate, written orders articulating his reasons for granting each continuance, and for finding that the period of each continuance was excludable under section 3161(h)(8)(A). The six "ends of justice" continuances were as follows:

| OLD TRIAL DATE | NEW TRIAL DATE | WHO ORIGINATED | MOTION FILED | CONTINUANCE GRANTED |
|---|---|---|---|---|
| 12/28/82 | 2/15/83 | Defendant | 12/9/82 | 12/15/82 |
| 2/15/83 | 4/19/83 | Government | 1/21/83 | 1/25/83 |
| 4/19/83 | 6/14/83 | Defendant | 4/4/83 | 4/6/83 |
| 6/14/83 | 9/13/83 | Defendant | 5/26/83 | 6/2/83 |
| 9/13/83 | 12/6/83 | Defendant | 8/30/83 | 10/3/83 |
| 12/6/83 | 3/6/84 | Defendant | 11/29/83 | 12/8/83 |

Gallardo filed a motion to dismiss the charges against him on October 21, 1983. The court granted that motion in part on January 20, 1984, and required the government to make an election of counts and drop at least three counts within ten days.

---

**2.** Gallardo contends that this court could affirm the district court's dismissal of his indictment on an alternative ground: he claims that the district court improperly granted three continuances under the STA, and therefore, regardless of how excludable delay is computed under the STA, the 70-day period was exceeded in his case. We reject that claim. *See* Analysis, Section C, *infra*.

Moreover, Gallardo has separately appealed the district court's decision to dismiss his indictment without prejudice. *See* 18 U.S.C. § 3162(a)(2). Because we rule that the STA was not violated in Gallardo's case, we need not decide whether the indictment should have been dismissed with or without prejudice.

The government failed to comply with the court's order within the allotted time, however, because it was preparing for trial in another case. According to the government, when it realized it had missed its ten-day deadline, it decided that the "most appropriate" course of action was to file a superseding indictment against Gallardo, which dropped four counts from the preceding indictment, although the district court's order had not required the filing of a new indictment.

On February 22, 1984, the government charged Gallardo in a second superseding indictment with four counts of interference with commerce and one count of embezzlement from a savings and loan association.[3] Gallardo was arraigned on the new indictment on March 2, 1984, and the district court rescheduled trial for April 3, 1984, ostensibly to give Gallardo's counsel 30 days to prepare for trial on the new charges, as required under 18 U.S.C. § 3161(c)(2).[4]

On March 16, 1984, Gallardo moved to dismiss the second superseding indictment for violation of the STA's 70-day indictment-to-trial limitation provision, 18 U.S.C. § 3161(c)(1). The district court granted

Gallardo's motion and dismissed his indictment without prejudice on May 30, 1984. Gallardo contended that the court's dismissal should be *with* prejudice, since the government had failed to comply in a timely manner with the court's order requiring an election of counts. However, the district court weighed the factors provided in 18 U.S.C. § 3162(a)(2) for determining whether to dismiss with or without prejudice, and rejected Gallardo's claim.

The government appeals the dismissal of Gallardo's indictment, and Gallardo separately appeals the district court's decision to dismiss without prejudice. Gallardo also contends that the district court's decisions to grant the third, fourth, and fifth "ends of justice" continuances in his case constituted an abuse of discretion, and provide this court with an alternative basis to affirm the dismissal of his indictment.

## B. Computations Under the STA

The parties agree that Gallardo's November 12, 1982 arraignment commenced the running of the STA's 70-day clock in his case. The parties also agree that various pretrial motions tolled the running of the 70-day period for at least 84 days.[5] They

---

**3.** The government's original indictment had charged Gallardo with bank embezzlement, in violation of 18 U.S.C. § 656 (1982), rather than with embezzlement from a savings and loan association, in violation of 18 U.S.C. § 651.

**4.** The district court appears to have been relying on this circuit's decision in *United States v. Harris,* 724 F.2d 1452 (9th Cir.1984), which held that section 3161(c)(2) requires that a defendant be provided a minimum of 30 days for trial preparation from the filing of any superseding indictment containing new charges against him. *But cf. United States v. Adu,* 770 F.2d 1511, 1513–14 (9th Cir.1985), (section 3161(c)(2)'s 30-day requirement does not apply in cases where the superseding indictment only makes clerical changes in the prior indictment and does not affect the defendant's preparation for trial).

The district court's postponement of Gallardo's scheduled trial date in order to satisfy section 3161(c)(2)'s 30-day rule, whether or not completely necessary to satisfy that requirement, could possibly have been interpreted to constitute the granting of a seventh "ends of justice" continuance, had the district court made the findings required in § 3161(h)(8)(A)

when Gallardo brought his motion under the STA. *See United States v. Henderson,* 746 F.2d 619, 623–24 (9th Cir.1984).

**5.** ·According to the district court clerk's speedy trial calculations, the following periods were excluded from the running of the 70-day period under 18 U.S.C. § 3161(h)(1)(F) and (J), because pretrial motions were either pending or under advisement:

| | Days Excluded |
|---|---|
| 12–30–82 to 1 –31–83 | 33 |
| 2 – 1–83 to 2 – 2–83 | 2 |
| 10–21–83 to 11– 4–83 | 15 |
| 11– 5–83 to 11–14–83 | 10 |
| 11–15–83 to 11–23–83 | 9 |
| 11–25–83 to 11–28–83 | 4 |
| 1 –12–84 to 1 –20–84 | 9 |
| 2 –29–84 to 3 – 1–84 | 2 |
| | 84 |

The government contends that an additional 48 days should have been excluded under 18 U.S.C. § 3161(h)(1)(F) because of the pendency of pretrial motions. However, these disputed days, even if excluded from the 70-day count, would not change the result in this case. For

further agree that although two superseding indictments were issued against Gallardo on March 3, 1983 and February 22, 1984, neither one tolled or caused a restarting of the 70-day clock.[6]

The threshold issue in this case is the effect upon the running of the 70-day period of the six "ends of justice" continuances granted by the district court under section 3161(h)(8)(A).[7] The government maintains that such continuances *toll* the running of the STA's 70-day clock, regardless of how much time is remaining on it: as a result, when an "ends of justice" continuance is granted, the amount of time remaining on the 70-day clock at the end of that continuance is exactly the same as the amount remaining when the continuance began. In contrast, Gallardo espouses the approach recommended by the *Judicial Conference Guidelines to the Administration of the Speedy Trial Act of 1974, as amended* (1974) (hereinafter *"Guidelines"*), which were employed by the district court clerk, and which provide that "ends of justice" continuances are *"tacked-on"* to the end of the 70-day limitation period, and do not stop the running of the 70-day clock until there would otherwise be no time remaining on it.

Thus, the government maintains that Gallardo's 70-day clock was tolled in December, 1982 with the beginning of the first "ends of justice" continuance, and continued to be tolled until March 6, 1984, at the end of the sixth consecutive continuance. At that point, the government maintains there was still sufficient time remaining on the 70-day clock—37 days—to allow for an April 3, 1984 trial date, as set by the district court. In contrast, Gallardo maintains that under the *Guidelines*'s approach, his 70-day clock was totally unaffected by the first "ends of justice" continuance and all but the last four days of the second continuance, until the 70-day period elapsed on April 15, 1983; at that point, the remaining continuances extended the time for trial, but on March 6, 1984, when the last continuance ended, there was no time left on the 70-day clock. According to Gallardo, March 6, 1984 was the final date he could be brought to trial without violating the STA.

## ANALYSIS

■ Based primarily upon the STA's language and legislative history, we conclude that "ends of justice" continuances *toll* the running of the STA's 70-day clock, and conclude as a result that the 70-day period did not elapse in Gallardo's case. We also reject Gallardo's claim that the district court abused its discretion in granting the

---

the government to prevail, we must conclude that the granting of the six "ends of justice" continuances tolled the running of the STA's 70-day clock. *See* Analysis, Section B, *infra.*

6. Under section 3161(d)(1) of the STA, the 70-day period begins to run anew

> [i]f any indictment ... is *dismissed upon motion of the defendant* ... and *thereafter* ... an information or indictment is filed charging such defendant with the same offense or an offense based upon the same conduct or arising from the same criminal episode....

18 U.S.C. § 3161(d)(1) (emphasis added).

This provision does not apply in Gallardo's case, because neither of the first two indictments in his case was *dismissed upon motion of the defendant.* The government voluntarily chose to file its first and second superseding indictments and to dismiss its preceding indictments. Even though the district court ordered the government to make an election of counts in its first superseding indictment on January 20, 1984, the court did not dismiss that indictment, or require the filing of a superseding indictment. Therefore, the first condition of section 3161(d)(1) was not triggered.

Moreover, under this circuit's recent decision in *United States v. Harris,* 724 F.2d 1452 (9th Cir.1984), section 3161(d)(1)'s use of the word "thereafter" indicates that it does not apply in cases where a superseding indictment is "filed *before* the [prior] indictment [is] dismissed." *Id.* at 1454 (emphasis original). Both of the superseding indictments in Gallardo's case were filed prior to dismissal of the preceding indictments.

7. This issue has nothing to do with the validity or advisability of the six "ends of justice" continuances, nor does it concern such issues as whether "ends of justice" continuances should be liberally or conservatively granted, or for what length of time they should be granted. All that is at stake is the method of computing excludable delay for continuances that have already been validly granted under the STA.

third, fourth, and fifth continuances. We therefore reverse the district court's dismissal of Gallardo's indictment. Because of our ruling, we need not address the issues raised in Gallardo's separate appeal.

### A. Standard of Review

We review de novo the district court's interpretation of the STA, including the court's methods of computing excludable delay for "ends of justice" continuances. *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984); *accord United States v. Henderson*, 746 F.2d 619, 622 (9th Cir. 1984). We review the district court's factual findings underlying its STA determinations, including its findings that exclusions of certain blocks of time from the 70-day limitation period "served the ends of justice," under the "clear error" standard of review. *Henderson*, 746 F.2d at 622; *Frey*, 735 F.2d at 352. We review the district court's decisions granting the third, fourth, and fifth "ends of justice" continuances to determine whether there was an abuse of discretion and whether Gallardo suffered prejudice as a result. *United States v. Maybusher*, 735 F.2d 366, 369–70 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

### B. Expiration of the STA's 70-Day Period

As noted above, whether or not the STA's 70-day period elapsed in Gallardo's case depends upon the method employed in computing excludable delay for the district court's six "ends of justice" continuances. If the government is correct and these continuances tolled the 70-day clock, then the period did not elapse in Gallardo's case. On the other hand, if Gallardo and the *Guidelines* are correct, then the STA's 70-day limitation was violated.[8]

### 1. Plain Wording of Section 3161(h)(8)(A)

The plain language of the "ends of justice" provision, section 3161(h)(8)(A), suggests that Congress intended "ends of justice" continuances to toll the running of the STA's 70-day clock. Section 3161(h) provides that:

> (h) *The following periods of delay shall be excluded* . . . in computing the time within which the trial of any such offense must commence:
>
> .    .    .    .    .
>
> (8)(A) *Any period of delay* resulting from a[n "ends of justice"] continuance
> . . . .

18 U.S.C. § 3161(h)(8)(A) (emphasis added). Congress's use of the word "any" suggests that *every* "ends of justice" continuance is *totally* excluded from STA calculations. For Gallardo's, or the *Guidelines*'s, interpretation to be correct, the phrase "any period of delay" in section (h)(8)(A) must be read to mean "any period of delay *after the 70-day clock has elapsed.*" In *United States v. Henderson*, 746 F.2d 619 (9th Cir.1984), we recently rejected an attempt to read additional requirements into the provisions of section 3161(h) that were not reflected in its plain language. In *Henderson*, a set of criminal defendants maintained that the STA's exclusion provision for pretrial motions, section 3161(h)(1)(F), authorizes excludable delays for pretrial motions only when such delays are " 'reasonably necessary.' " *Id.* at 622. We noted that section (h)(1)(F) authorizes exclusions for "*[a]ny period of delay* . . . including . . . delay resulting from *any pretrial motion*," 18 U.S.C. § 3161(h)(1)(F) (emphasis added); "*[o]n its face*, the statute excludes delays resulting from pretrial motions *without qualification.* . . . It does not say 'any reasonable period of delay.' " *Id.* We declined to rewrite the phrase "any

---

**8.** We acknowledge that either the government's approach for computing excludable delay for "ends of justice" continuances or the approach espoused by Gallardo and the *Guidelines* would be logically consistent and administrable. However, it is our responsibility to determine *what Congress intended* when it adopted the "ends of justice" provision. We examine the provision's language and legislative history, along with several other considerations, in order to make that determination.

period of delay" to mean "any reasonable period of delay," noting that Congress was perfectly capable of writing the provision that way if it had intended that meaning. *See id.*

Similarly, in the case of "ends of justice" continuances, Congress could easily have provided that such continuances are "excluded" only once the STA's 70-day clock has elapsed. The STA is an extremely detailed, precisely drafted statutory scheme. Yet Congress did not write such a provision into the STA. We must therefore apply the language of section 3161(h)(8)(A) that Congress chose to adopt.

### 2. Wording of Surrounding Provisions

The wording of other STA provisions also suggests that "ends of justice" continuances toll the 70-day clock. Section 3161(h) enumerates eight different types of "period[s] of delay" that "shall be excluded" in STA computations. Seven of these eight—those enumerated in sections 3161(h)(1)-(6) and (8)—begin with or include the phrase "any period of delay," as does the "ends of justice" provision.[9] As we indicated in *Henderson,* the fact that Congress chose to employ the same phrase in these provisions suggests that it intended them to be interpreted uniformly. *See* 746 F.2d at 622. Since many of these provisions create exclusions for occurrences and stages in a criminal action that are likely to arise long before 70 days have elapsed— *see, e.g.,* 18 U.S.C. §§ 3161(h)(1)(A) (exclusion for competency examinations), (h)(1)(F) (pretrial motions), (h)(3)(A) (fugitive defendant or witness), (h)(4) (mental incompetence or physical inability of defendant to stand trial)—they clearly authorize tolling of the 70-day clock. We conclude that the "ends of justice" provision authorizes tolling of the 70-day clock as well.

Moreover, in *Henderson,* we concluded that Congress's use of the phrase "any period of delay" in various provisions of

section 3161(h) indicated that any continuances granted under those provisions would result in "automatic" exclusions from the 70-day clock. *See id.* Thus, an "ends of justice" continuance granted under section (h)(8) must also result in an automatic exclusion from the 70-day clock, rather than resulting in an exclusion only if the 70-day period has already elapsed.

### 3. Legislative History of the STA and Its 1979 Amendments

The legislative history of the STA and its 1979 amendments also supports the conclusion that "ends of justice" continuances toll the running of the 70-day clock. First, the legislative history in 1974 contains a number of passages discussing "ends of justice" continuances, which suggest that Congress believed these continuances would "toll" the running of the 70-day clock before it elapsed and "carve out" blocks of time in the 70-day limitation period. *See, e.g.,* H.R.Rep. No. 1508, 93d Cong., 2d Sess. 22 (1974), U.S.Code Cong. & Admin.News 1974, p. 7401, ("ends of justice" provision "would permit a judge ... to grant a continuance *which would toll the time limits of the bill*") (emphasis added); 120 Cong. Rec. 41774 (1974) ("ends of justice" provision authorizes trial judge *"to suspend the running of the time limits* by motion to continue") .(emphasis added).

Second, several of the 1979 amendments suggest that Congress understood the "ends of justice" provision to authorize continuances during the middle of the 70-day limitation period. For example, one amendment to section (h)(8)(B) authorized the granting of an "ends of justice" continuance so as not to "deny the defendant reasonable time to obtain counsel." 18 U.S.C. § 3161(h)(8)(B)(iv). The need for such a continuance would almost always arise *before* the expiration of 70 days, and Congress specifically recognized that such a continuance would *"toll the time limit* for a reasonable period," and would " 'stop

---

**9.** Of these seven provisions, all but one—section 3161(h)(6)—actually begin with the phrase "any period of delay," whereas section 3161(h)(6) contains the phrase in its midst. The eighth

provision, section 3161(h)(7), which relates to the joinder of co-defendants, begins with the phrase "[a] reasonable period of delay." 18 U.S.C. § 3161(h)(7).

the clock' ... until the defendant obtains counsel." S.Rep. No. 212, 96th Cong., 1st Sess. 35 (1979) (emphasis added). Moreover, the 1979 Congress expressly indicated that "ends of justice" continuances could be employed by trial courts to increase their time to hold a matter "under advisement" beyond the 30-day maximum prescribed by section 3161(h)(1)(J), or to complete "extensive discovery based on complex transactions." *See* S.Rep. No. 212, 96th Cong., 1st Sess. 33–34 (1979); H.R. Rep. No. 390, 96th Cong., 1st Sess. 12 (1979), U.S.Code Cong. & Admin.News 1979, pp. 805, 816. These situations would all normally arise before 70 days have elapsed.

Third, the 1979 Congress specifically criticized the "cautious" approach to the "ends of justice" provision contained in the Judicial Conference *Guidelines*, noting that the section had been under-used since the STA's passage, and Congress especially commended the alternate set of STA guidelines adopted by the Second Circuit as being "worthy of consideration by all districts as a model for future implementation." *See* S.Rep. No. 212, 96th Cong., 1st Sess. 10 (1979) ("too often, [those drafting the *Guidelines* ] have erred on the side of caution"). In its guidelines, the Second Circuit had adopted a "tolling" approach to the "ends of justice" provision and criticized the Judicial Conference *Guidelines*'s "tacking-on" approach on the grounds that it would result in a last-minute rush to bring many defendants to trial or obtain new continuances.

█ The Second Circuit had recognized that many courts normally schedule trial to commence on the final day of an "ends of justice" continuance: if such a continuance tolls the 70-day clock, "there [would often] be substantial unused non-excluded time available" as of the day of trial; however, under the *Guidelines*'s "tacking-on" approach, there would never be any time re-

maining. *See Second Circuit Guidelines*, 40–41. Thus, if something unforeseen occurs, such as the illness of potential jurors or the judge, requiring a trial to be delayed, under the tolling approach, there would usually be no need for an additional continuance, whereas under the tacking-on approach, there always would be.[10] Yet a new "ends of justice" continuance cannot be granted simply to serve the court's own scheduling needs, as opposed to the needs of the parties. *See United States v. Nance*, 666 F.2d 353, 356 (9th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *United States v. Janik*, 723 F.2d 537, 543 (7th Cir.1983). Although it is widely recognized that there are "inevitable slips in getting a case to trial," *Janik*, 723 F.2d at 543, it is the purpose of the 70-day period, and not of a new "ends of justice" continuance, to provide a "safety margin." *See id.* As a result, the Second Circuit had concluded that granting an "ends of justice" continuance tolls the running of a defendant's 70-day clock:

> ... There is nothing inconsistent with the statutory purpose in reading an ["ends of justice"] continuance as a form of excluded time. This reading permits more rational scheduling of cases and at the same time avoids the necessity of determining at the last minute whether a [new "ends of justice"] continuance will be available.

*Second Circuit Guidelines*, 40–41.

Although none of these references in the 1974 and 1979 legislative history conclusively indicates that Congress intended "ends of justice" continuances to toll the STA clock, they all support such a conclusion. We have not found any references in the legislative history of either the STA or its amendments to suggest that this was not Congress's intent.

### 4. *Analysis By Other Courts*

The only case where a court has directly addressed the effect of "ends of justice"

---

**10.** Arguably, under the *Guidelines* approach, courts could still schedule trial a day or two before the end of the continuance period in order to be safe, but "padding" the length of the

continuance in this way may violate the spirit of what is required under section (h)(8)(A). *See United States v. Janik*, 723 F.2d 537, 543 (7th Cir.1983).

continuances on the STA's 70-day clock is the Eleventh Circuit's recent decision in *United States v. Campbell*, 706 F.2d 1138 (11th Cir.1983).[11] In *Campbell*, the Eleventh Circuit reached a conclusion similar to that of the Second Circuit in its STA guidelines.

Campbell had been joined in a narcotics conspiracy action with several co-defendants. After 21 days had run on his 70-day clock, Campbell's co-defendants filed a series of motions to dismiss that resulted in STA exclusions for all defendants under sections (h)(7) and (h)(8). Four months later, the trial court granted these motions to dismiss, leaving Campbell as the sole defendant in the action. *Id.* at 1140–41.

Campbell maintained, as does Gallardo, that under the *Guidelines*'s approach, his 70-day clock ran down to zero before the section (h)(8) (and also the section (h)(7)) [12] exclusions began to take effect. Therefore, he claimed that the court's failure to begin his trial or grant a new continuance on the day after his co-defendants were dismissed—since that was when his 70-day clock began to run again—constituted an STA violation. The Eleventh Circuit rejected his claim and expressly rejected the *Guidelines* approach to computing excludable delay for "ends of justice" continuances. The court noted, as had the Second Circuit, that the "tacking-on" approach advocated in the *Guidelines* would routinely create situations, as in Campbell's case, where the government has only one day to bring a defendant to trial. *See id.* at 1142–43 & n. 9.[13]

### 5. The Judicial Conference Guidelines

■ The Judicial Conference *Guidelines* support Gallardo's position on the effect of the six "ends of justice" continuances. Although this court generally looks to the *Guidelines* as a useful interpretation of the STA, in this case they plainly conflict with Congress's intent concerning the "ends of justice" provision. Under such circumstances, we cannot be bound by them. *See United States v. Rush*, 738 F.2d 497, 503–04 (1st Cir.1984) (noting that "[t]he *Guidelines*, of course, are not binding," especially when they appear to conflict with congressional intent), *cert. denied*, — U.S. —, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *United States v. Novak*, 715 F.2d 810, 815 (3d Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *see also Guidelines* 16 (indicating that this circuit's decision in *United States v. Harris*, 724 F.2d 1452 (9th Cir.1984), does not follow the *Guidelines*'s interpretation of section 3161(c)(2)).

■ We therefore reject the "tacking-on" approach to "ends of justice" contin-

---

11. A number of court decisions contain passing references to "tolling" or "carving out" time for "ends of justice" continuances that appear to support the conclusion that these continuances toll the running of the STA's 70-day clock. *See, e.g., United States v. Brooks*, 697 F.2d 517, 522 (3d Cir.1982) ("entire period of time covered by ... 'ends of justice' continuance was properly *carved out* from the calculation of the seventy days within which the Act requires the defendants to be brought to trial") (emphasis added), *cert. denied*, 460 U.S. 1071, 103 S.Ct. 1526, 75 L.Ed.2d 949 (1983). However, with the exception of the Eleventh Circuit's decision in *Campbell*, none of these decisions has directly addressed the issue of whether an "ends of justice" continuance tolls or is tacked-on to the STA's 70-day period.

12. The Guidelines provide the same method of computing excludable delay for section (h)(7) continuances as for section (h)(8) continuances. *See Guidelines* 58–59.

13. The Eleventh Circuit also noted that "[r]ather than requiring one single approach to the (h)(8) calculation, as the Guidelines suggest, we think it preferable to permit the trial court to exercise its discretion, based on the particular facts of each case, and determine when an (h)(8) exclusion should begin and end." *Id.* at 1143. However, this analysis seems flawed. As the *Campbell* court itself indicated, the STA was intended in large part to foster predictability in the scheduling of criminal trials, *see id.* at 1142 n. 9, and therefore, authorizing courts to change the rules in every case seems to defeat the STA's purpose. Moreover, trial courts will have broad discretion to manage the scheduling of cases regardless of how excludable delay is computed: as long as these courts retain the right to grant "ends of justice" continuances, they will be able to adapt to the needs of individual cases, and the method of computing delay will only alter the timing of when they will need to grant continuances.

uances contained in the *Guidelines,* and instead conclude that such continuances toll the STA's 70-day clock. As a result, the 70-day clock did not elapse in Gallardo's case, and the STA was not violated.

### C. The Granting of the Third, Fourth, and Fifth "Ends of Justice" Continuances.

As an alternative basis for affirming the dismissal of his indictment, Gallardo contends that the district court abused its discretion in granting the third, fourth, and fifth "ends of justice" continuances, which provided excludable delay from April 19, 1983 to December 3, 1983. Gallardo maintains that each of these challenged continuances was granted "because the [district court] magistrate had not [yet] ruled on Gallardo's pretrial motions which were filed on December 30, 1982." According to Gallardo, the magistrate had withdrawn all of Gallardo's pretrial motions from submission on February 2, 1983, probably "due to [his] workload," but also possibly for some other reason.

Gallardo maintains that because the delay in addressing his pretrial motions was caused by the court's workload, and because this delay in turn necessitated the granting of the three "ends of justice" continuances, the district court violated section 3161(h)(8)(C) of the STA, which provides that:

> No continuance under paragraph 8(A) of this subsection [the "ends of justice" provision] shall be granted *because of general congestion of the court's calendar....*

18 U.S.C. § 3161(h)(8)(C) (emphasis added); *see Nance,* 666 F.2d at 359. Gallardo contends that even if the withdrawal of his pretrial motions was not due to the magistrate's workload, there was still not a sufficient basis for the district court to grant the three challenged continuances. As a result, he maintains that the periods covered by these three continuances were not properly excluded from the STA's 70-day clock, and therefore, the 70-day period elapsed long before March 7, 1984, when the district court found the STA had been violated.

■ We reject Gallardo's challenge to the granting of the three continuances. Gallardo is correct in his assertion that a continuance granted simply "because of general congestion of the court's calendar" is not excludable under section 3161(h)(8). *Nance,* 666 F.2d at 355–56 & n. 4; *accord United States v. Perez-Reveles,* 715 F.2d 1348, 1352 (9th Cir.1983); H.R.Rep. No. 1508, 93d Cong. 2d Sess. 22, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7415. However, this limitation applies only to continuances granted by courts in direct response to their own crowded dockets. *See, e.g., Nance,* 666 F.2d at 359 (impermissible to exclude block of time "on the ground that three custody cases were set for trial before the court during that time"); *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 376 (2d Cir.1979) (impermissible to exclude two-and-one-half month period " 'in the public interest' " because of trial judge's "commitment to the trial of other cases" during that time). It does not apply in cases like Gallardo's where the continuances are only indirectly attributable to the court's congestion.

■ The district court did not grant the three contested continuances on its own motion, or in direct response to its own calendar needs. It granted them in response to signed stipulations by both parties that they needed additional time to prepare for trial. The fact that these stipulations all referred to the pendency of Gallardo's pretrial motions as a reason the parties required more time for trial preparation does not indicate that the continuances were granted because of the court's congested calendar. In each case, had a continuance not been requested, the court would presumably have ruled on the pending motions on or prior to the trial date. If the parties then needed additional time for trial preparation, they presumably could have requested it at that time. The disputed continuances were at most only indirectly attributable to the court's scheduling

**1506**

problems. None of the district court's orders granting the continuances referred to the court's scheduling needs as a basis or justification: they were all premised upon reasons provided in section 3161(h)(8)(B), and were therefore fully in keeping with the requirements of the STA. *See Henderson,* 746 F.2d at 624.

Furthermore, Gallardo was the moving force behind the granting of each continuance that he is now challenging. In each case, Gallardo's counsel drafted the stipulations, initiated discussions with the government concerning the need for a continuance, and drafted the court's order granting the continuance. He therefore cannot maintain that these continuances give rise to an STA violation. *See Rush,* 738 F.2d at 508 ("although defendants do not bear the primary responsibility for alerting the court to speedy trial deadlines, this does not mean that they may deliberately obtain an (h)(8) continuance for their own convenience ... and then later claim that the court abused its discretion in granting the requested continuance").

Gallardo contends that under the *Guidelines,* a defendant cannot be held to have "waived" his rights under the STA. *See Guidelines* 62–63. However, there has not been such a waiver in this case. The district court made all the required findings to grant the three "ends of justice" continuances based on the representations made to it by the parties in their stipulations.[14] It found that "denial of [any of the three] continuance[s] ... would deny counsel [for both parties] the reasonable time necessary for effective trial preparation," and that therefore, "the ends of justice [would be] served by ... granting [the] continuance[s]." *See* 18 U.S.C. § 3161(h)(8). We

conclude that these findings were not clearly erroneous. *Henderson,* 746 F.2d at 624; *United States v. Bryant,* 726 F.2d 510, 511–12 (9th Cir.1984); 18 U.S.C. § 3161(h)(8)(A), (B)(iv).

## CONCLUSION

Since we conclude that the STA's 70-day clock did not elapse in Gallardo's case, and that the district court did not abuse its discretion in granting the third, fourth, and fifth "ends of justice" continuances, we reverse the district court's dismissal of Gallardo's indictment. Therefore, we need not reach the issues presented in Gallardo's separate appeal.

**REVERSED and REMANDED.**

---

**14.** There is a significant difference between a defendant's having "waived" his rights under the STA, which implies that the court did not undertake to determine independently whether the STA's requirements were satisfied before it granted the continuance, and the situation in the present case, where the court relied upon the representations of Gallardo's counsel, but then performed a full-scale "ends of justice" analysis under the STA before granting the continuances.

The *Guidelines* only state that "[i]t would be inconsistent to permit a defendant, through a purported 'waiver,' to relieve the court of this obligation [of balancing the different factors and considerations listed in section 3161(h)(8)]." *Guidelines,* 63. Since the court performed the analysis required under section 3161(h)(8) for each challenged continuance in this case, no waiver of STA rights occurred.