**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5191

MICHAEL E. TOTH,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-94-9)

Argued: January 31, 1996

Decided: July 31, 1996

Before RUSSELL and HAMILTON, Circuit Judges,
and BLAKE, United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Anthony Mark Mariani, ANTHONY M. MARIANI,
P.C., Pittsburgh, Pennsylvania, for Appellant. Sherry L. Muncy,
Assistant United States Attorney, Elkins, West Virginia, for Appellee.
**ON BRIEF:** David E. Godwin, Acting United States Attorney,
Elkins, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael E. Toth ("Toth") appeals his conviction for conspiracy and related offenses arising out of a scheme to steal from his employer, the Peabody Coal Company, and sell for his own benefit over 29,000 tons of coal worth more than $600,000. For the reasons set forth below, we affirm.

I.

The evidence at trial showed that Toth, who was the general superintendent of Federal No. 2 Mine at Fairview, West Virginia, owned by Peabody, devised a scheme to defraud his employer with the help of Jeff Isiminger, the chief security guard at the mine, and several other individuals. The billing process at the mine depended on a computer-generated report which recorded the weight of trucks measured by scales which the trucks crossed as they left the mine loaded with coal. Isiminger had responsibility for the computer report. Toth approached Isiminger in January 1992 to secure his cooperation in deleting a certain number of truckloads from the reports. Thus, no bill would be generated by Peabody for those truckloads. With Isiminger's agreement to participate, Toth then obtained the assistance of a friend and miner named Hans Mohr, who found several buyers for the stolen coal.

Between January and August 1992 approximately 29,000 tons of coal were taken from the mine but not recorded on Peabody's computer reports. The scheme was discovered when another mine employee noticed a discrepancy between the number of trucks he was loading and the number shown on the mine records. He reported his observations to mine officials, who in turn contacted the police. The subsequent investigation included video surveillance and establishing a second file on the computer which showed the weights of all the

2

trucks that crossed the scales, including those deleted by Isiminger. Isiminger gave lists of the stolen coal amounts to Toth, and some of these lists were later found in a search of Toth's house. Isiminger, who cooperated with the investigation, also recorded a conversation with Toth in which they discussed the theft, and Toth told Isiminger to play dumb if the police questioned him. The value of the stolen coal was approximately $600,000. Toth personally received approximately $64,000 as a result of the fraud.

On January 13, 1994, Toth was named as a co-defendant in 18 counts of a 23-count indictment returned by a federal grand jury in the Northern District of West Virginia. The charges against Toth included conspiracy, mail and wire fraud, interstate transportation of stolen property, money laundering, and tampering with a witness. Two of the buyers of the stolen coal, James Pettite and James Frey, also were named in the indictment but later entered plea agreements with the government and testified at trial. Isiminger and Mohr also entered plea agreements with the government and testified against Toth.

After various pre-trial proceedings, the case proceeded to trial on October 4, 1994. On October 17, 1994, the jury convicted Toth of all charges. On March 6, 1995, Toth was sentenced to serve 97 months in prison, followed by three years of supervised release, and to pay $2,800 in restitution.

II.

The first issue raised by Toth relates to the prosecutor's failure to provide in a timely fashion certain allegedly exculpatory information in violation of Brady v. Maryland, 373 U.S. 83 (1963). The government provided "open file" discovery in this case, making available to Toth's counsel the contents of several file cabinets containing the evidence gathered during the investigation. In response to a pretrial motion filed by Toth seeking Brady material, however, the government initially denied that it possessed any such material. It was later determined that the prosecutor had in her desk drawer a confidential memorandum and attached documents, titled as a "hypothetical" proffer, which had been provided to the prosecution by counsel for a separate target of the grand jury investigation, Arthur J. Boyle, Jr. Mr.

3

Boyle was alleged to have purchased some of the coal through Frey, knowing it was stolen. The United States Attorney ultimately decided not to seek an indictment of Mr. Boyle.

The Boyle documents eventually were provided to Toth's counsel. On May 11, 1994, a hearing was held on Toth's motion to dismiss the indictment for the government's failure to make the Boyle materials available earlier in response to Toth's request for Brady materials. On May 12, 1994, Toth filed a motion for a 45-day continuance in order to review the Boyle materials and further prepare for trial in light of those documents. The trial, which had been scheduled to begin May 17, 1994, was rescheduled for October 4, 1994.

The United States Magistrate Judge to whom Toth's motion to dismiss the indictment was referred concluded on the basis of the testimony presented before him that the government prosecutor was credible in her explanation that she had forgotten about the Boyle materials when she responded to Toth's pretrial motion, and that no bad faith was involved. The district judge, affirming the magistrate judge, found that the government may have acted carelessly but not with intentional or reckless disregard toward the defendant's rights.

Toth contends that the court, pursuant to its inherent supervisory powers, should have dismissed the indictment because of what he terms outrageous governmental misconduct. The Supreme Court has recognized that, in an extreme case, governmental misconduct may be so outrageous as to require dismissal of charges against a defendant under the Due Process Clause of the Fifth Amendment. United States v. Russell, 411 U.S. 423, 432 (1973). Such claims, however, are difficult to support and rarely successful. United States v. Jones, 13 F.3d 100, 104 (4th Cir. 1993). In this case Toth has shown no reason to conclude that the magistrate judge, and the district judge in his affirmance of the magistrate judge's findings, were clearly erroneous in determining that the prosecutor acted carelessly, at worst, and not with deliberate or reckless disregard for the defendant's rights. In light of the confidential and "hypothetical" nature of the Boyle documents, the fact that they did not relate directly to Toth, and the fact that the government had agreed not to use them in any way, the prosecutor's failure to recognize that they should be disclosed to Toth's counsel falls far short of conduct sufficiently outrageous to "shock the

4

conscience of the court." See United States v. Osborne, 935 F.2d 32, 36 (4th Cir. 1991).

Toth makes a related argument that the delay in providing him the Boyle materials caused him prejudice requiring dismissal of the indictment. Failure by the government to disclose material evidence favorable to the defendant in response to a defense request may violate due process, regardless of a prosecutor's good or bad faith. Brady, 373 U.S. at 87; see also United States v. Agurs, 427 U.S. 97, 107 (1976). There is no violation, however, unless the failure to disclose is sufficiently significant as to result in the denial of a defendant's right to a fair trial. Id. at 108. [1] In this case, when the documents were produced, Toth sought and received a continuance of the trial date that gave him ample time to make any use of the Boyle materials he found helpful to his defense. The only prejudice he points to is that he received a longer continuance than he requested, thereby interfering with his request for a speedy trial. He remained free on bond, however, during the entire time. While he contends that the delay before trial increased his level of anxiety and financial hardship, he identifies no way in which his ability to present a defense to the charges was compromised. Dismissal of the indictment was not required.

III.

Toth next argues that his rights to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and under the Sixth Amendment to the Constitution were violated when the court granted a continuance of the trial from May 17, 1994 until October 4, 1994 in response to Toth's request for a 45-day continuance to consider the Boyle

_____

[1] The government denies that the Boyle materials were exculpatory of Toth, as they focused on Boyle's lack of knowledge that the coal he received was stolen. At trial, Toth conceded the coal was stolen but denied personal involvement in the scheme. Toth, however, contends that the Boyle materials related to the credibility of a government witness and also to use of an expert witness. Under Giglio v. United States, 405 U.S. 150 (1972), the government is required to disclose evidence probative of the credibility of a witness if the reliability of that witness may be determinative of guilt or innocence. Id. at 154-55.

5

materials. In granting the continuance, the court entered an order under 18 U.S.C. § 3161(h)(8)(A) and (B) excluding the time from May until October in the interests of justice and to allow counsel reasonable time necessary for effective preparation for trial.[2]

Under the Act, an indictment is to be dismissed if more than 70 days elapse between the indictment or initial appearance and trial, not counting time properly excludable for the pendency of motions and other specified reasons. 18 U.S.C. § 3161. Toth first contends that none of the delay after May 17, 1994, should be excludable, even though he requested a continuance, because the government's alleged misconduct in not producing the Boyle materials at an earlier date compelled him to request a continuance he did not want. As discussed above, however, any misconduct involved in failing to produce the Boyle materials was not so egregious as to justify the sanction of dismissal Toth seeks, either directly or by refusing to exclude time otherwise properly excludable under the Speedy Trial Act. Assuming the 45 days requested by Toth in his motion for continuance and the time attributable to consideration of Toth's motion to dismiss are excluded, Toth's own calculations show a delay of only three days past the 70-day limit set by the Act. (Appellant's Brief at 44-45).

Toth then relies on the fact that the choice of October 4, 1994, rather than an earlier date to begin trial, may have been somewhat influenced by the general congestion of the court's calendar. Acknowledging this, the district court in denying the motion to dismiss nevertheless found any such additional period of delay properly excludable because the continuance itself was not a result of the court's calendar.

Periods of delay attributable solely to the congestion of the court's calendar are not excludable under the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(C). In this case, however, the delay resulted from the defendant's own request for a continuance and from his motion to dismiss. The district court reset the trial at the first appropriate date that allowed time to resolve the motion and time for defense counsel to

_____

**2** Much of this time was excludable for other reasons as well, which have been sufficiently discussed in the briefs and need not be repeated here.

6

consider the Boyle materials. The date also was chosen to insure an uninterrupted block of time for the trial to proceed. There was no error in excluding the time under the Speedy Trial Act. See United States v. Gallardo, 773 F.2d 1496, 1505-06 (9th Cir. 1985). The district court also correctly found no violation of Toth's constitutional right to a speedy trial. See Barker v. Wingo, 407 U.S. 514 (1972).

IV.

One of Toth's co-defendants, James Frey, entered a plea agreement with the government. As a condition of receiving that agreement, Frey successfully passed a polygraph examination. At trial, Frey was called to testify by the government. Government counsel advised the jury in her opening statement, however, that they should not believe all of Frey's testimony. A portion of Frey's testimony was favorable to Toth.

Toth then sought to introduce evidence of Frey's successful completion of the polygraph examination in order to bolster Frey's credibility.[3] The trial court, under Fourth Circuit precedent and also in the exercise of his discretion under Rule 403, refused to admit this evidence, finding that its probative value would be outweighed by the consumption of time that would be involved and the likelihood of confusing the jury.

The rule in this Circuit is that evidence that an accused or a witness has taken a polygraph test is inadmissible. United States v. A & S Council Oil Co., 947 F.2d 1128, 1133 (4th Cir. 1991); United States v. Brevard, 739 F.2d 180, 182 (4th Cir. 1984). An exception was made in the Council Oil case where the government had offered expert testimony on the credibility of a key government witness and the trial court had refused to permit cross-examination of the expert concerning the results of a polygraph test taken by the witness. In that case we held that the polygraph result should have been admitted as an attack on the expert's opinion, although not as a direct attack on the credibility of the witness. Council Oil, 947 F.2d at 1135.

_____

[3] According to the government, the polygraph questions answered by Frey related primarily to Boyle rather than to Toth.

7

As we also recognized in Council Oil, circuits "that have not yet permitted evidence of polygraph results for any purpose are now in the decided minority." Id. at 1134 n.4. Toth's counsel urges us to follow the opinion of the Eleventh Circuit, en banc , in United States v. Piccinonna, 885 F.2d 1529 (11th Cir. 1989), or that of the Fifth Circuit in United States v. Posado, 57 F.3d 428 (5th Cir. 1995). In Council Oil we concluded that en banc consideration would be necessary before altering Fourth Circuit practice by permitting polygraph results to be used as a direct attack on or bolstering of the credibility of a witness. Council Oil, 947 F.2d at 1134. Council Oil was decided prior to the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, ___ U.S. ___, 113 S. Ct. 2786 (1993). The Fifth Circuit in Posado concluded that because of the change in the law effected by Daubert, en banc consideration was not necessary to overturn that Circuit's per se rule against admissibility of polygraph evidence. Posado, 57 F.3d at 433-34.

While we might be inclined to agree with the Fifth Circuit in an appropriate case, it is not necessary to reach that issue in Toth's case. Both the Piccinonna and Posado opinions recognize the "gatekeeper" function of Rule 403. Posado, 57 F.3d at 435; Piccinonna, 885 F.2d at 1536. Here the trial judge, in the exercise of his discretion, concluded that any probative value of the polygraph results was outweighed by the potential for confusing the jury and unnecessarily lengthening the trial by opening up the polygraph issue. We see no reason to disturb that ruling.

V.

Toth next challenges the trial court's admission under Fed. R. Evid. 404(b) of testimony concerning other "bad acts" engaged in by Toth with either Mohr or Isiminger. The evidence admitted showed that (1) Toth had a well dug at Isiminger's home as a "wedding present" at the expense of the mine; (2) Toth had Isiminger deliver to Toth's home certain property (a cannon and a weight bench) built at the mine by mine employees; (3) Toth directed Isiminger to unlawfully remove from mine property and have processed a dead deer in violation of wildlife laws, causing Isiminger to receive a criminal conviction for a wildlife violation; and (4) Toth and Mohr cooperated in a scheme to have slurry, a coal by-product, transported out of the mine and sold

8

for their personal profit. The trial court has broad discretion in ruling on the admissibility of evidence offered under Rule 404(b), and its decisions are not reversed unless they are "arbitrary and irrational." United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995) (quoting United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990)), cert. denied 116 S. Ct. 784 (1996). "Evidence of prior bad acts is admissible if it is (1) relevant to an issue other than character, (2) necessary to show an essential part of the crime or the context of the crime, and (3) reliable." Id. In this case the trial court properly weighed any unfairly prejudicial effect of the evidence against its probative value, see Fed. R. Ev. 403, and admitted the evidence for various purposes, including demonstration of the close, conspiratorial relationship between Toth, Mohr, and Isiminger. Admission of evidence for this purpose is permissible under Rule 404(b). United States v. Boyd, 53 F.3d 631, 637 (4th Cir.), cert. denied , 116 S. Ct. 322 (1995). The conduct testified to was no more "sensational or disturbing" than the fraud with which Toth was charged. Id. The trial court did not err in admitting the 404(b) evidence.

VI.

As his last issue Toth contends that the district court incorrectly applied an enhancement under § 3B1.1(a) of the United States Sentencing Guidelines to increase Toth's adjusted offense level on Count 18 of the indictment, money laundering. Even if Toth is correct, however, resentencing would not be required because the district judge explained that the 97-month sentence he imposed on Count 18 would have been the same, in light of the seriousness of the offense, without application of the four-level enhancement. See United States v. Smith, 914 F.2d 565, 569 n.3 (4th Cir. 1990); United States v. White, 875 F.2d 427, 432-33 (4th Cir. 1989).

Accordingly, Toth's convictions and sentence are affirmed.

AFFIRMED

9